FILED IN
COURT OF CRIMINAL APPEALS

December 21, 2015

ABEL ACOSTA, CLERK

0478-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/21/2015 12:00:00 AM
Accepted 12/21/2015 8:10:37 AM
ABEL ACOSTA
CLERK

# APPENDIX



CASE NO. 171416101010
INCIDENT NO./TRN: 916594206XA001

| THE STATE OF TEXAS | § | IN THE COUNTY CRIMINAL |
|---|---|---|
| V. | § § | COURT AT LAW NO. 2 |
| BARFIELD, LISA ANN | § § | HARRIS COUNTY, TEXAS |
| STATE ID NO.: GA2196687W | § § | |

## JUDGMENT OF CONVICTION BY JURY

| | | | |
|---|---|---|---|
| Judge Presiding: | HON. WILLIAM HARMON | Date Judgment Entered: | 5/31/2013 |
| Attorney for State: | J. MORRISON | Attorney for Defendant: | THIESSEN, MARK RYAN |

**Offense for which Defendant Convicted:**
DWI 2ND OFFENDER BAC .08

| | | |
|---|---|---|
| Charging Instrument: INFORMATION | | Statute for Offense: N/A |

**Date of Offense:**
10/18/2010

| | | |
|---|---|---|
| Degree of Offense: CLASS A MISDEMEANOR | | Plea to Offense: NOT GUILTY |
| Verdict of Jury: GUILTY | | Findings on Deadly Weapon: N/A |
| Plea to 1st Enhancement Paragraph: TRUE | | Plea to 2nd Enhancement/Habitual Paragraph: N/A |
| Findings on 1st Enhancement Paragraph: TRUE | | Findings on 2nd Enhancement/Habitual Paragraph: N/A |

| Punished Assessed by: JURY | Date Sentence Imposed: 5/31/2013 | Date Sentence to Commence: 5/31/2013 |
|---|---|---|
| Punishment and Place of Confinement: | 90 DAYS COUNTY JAIL | |

THIS SENTENCE SHALL RUN **CONCURRENTLY.**

☒ SENTENCE OF CONFINEMENT SUSPENDED, DEFENDANT PLACED ON COMMUNITY SUPERVISION FOR **1 YEAR.**

| Fine: $ 1,000 | Court Costs: $ 657.00 | Restitution: $ N/A | Restitution Payable to: ☐ VICTIM (see below) ☐ AGENCY/AGENT (see below) |
|---|---|---|---|
| Time Credited: N/A | If Defendant is to serve sentence in county jail or is given credit toward fine and costs, enter days credited below. NOTES: N/A | | |

Driver's license is suspended for a period of **2 YEARS**

☒ **Family Violence:**
The Court FINDS that Defendant was prosecuted for an offense under Title 5 of the Penal Code that involved family violence. TEX. CODE CRIM. PROC. art. 42.013.

☒ **Weapon Forfeiture:**
The Court FINDS that a law enforcement agency, namely          , seized a weapon, namely          , in connection with an offense involving the use of a weapon or an offense under Chapter 46 of the Penal Code. The Court FINDS that 1) Defendant has been previously convicted under Chapter 46 of the Penal Code.

☐ **Name changed from**

All pertinent information, names and assessments indicated above are incorporated into the language of the judgment below by reference.
This cause was called for trial in **Harris County, Texas.** The State appeared by her District Attorney.
**Counsel / Waiver of Counsel (select one)**
☒ Defendant appeared in person with Counsel.
☐ Defendant knowingly, intelligently, and voluntarily waived the right to representation by counsel in writing in open court.

It appeared to the Court that Defendant was mentally competent and had pleaded as shown above to the charging instrument. Both parties announced ready for trial. A jury was selected, impaneled, and sworn. The INFORMATION was read to the jury, and Defendant entered a plea to the charged offense. The Court received the plea and entered it of record.

The jury heard the evidence submitted and argument of counsel. The Court charged the jury as to its duty to determine the guilt or innocence of Defendant, and the jury retired to consider the evidence. Upon returning to open court, the jury delivered its verdict in the presence of Defendant and defense counsel, if any.

The Court received the verdict and ORDERED it entered upon the minutes of the Court.

### Punishment Assessed by Jury / Court / No election (select one)

☒ **Jury.** Defendant entered a plea and filed a written election to have the jury assess punishment. The jury heard evidence relative to the question of punishment. The Court charged the jury and it retired to consider the question of punishment. After due deliberation, the jury was brought into Court, and, in open court, it returned its verdict as indicated above.

☐ **Court.** Defendant elected to have the Court assess punishment. After hearing evidence relative to the question of punishment, the Court assessed Defendant's punishment as indicated above.

☐ **No Election.** Defendant did not file a written election as to whether the judge or jury should assess punishment. After hearing evidence relative to the question of punishment, the Court assessed Defendant's punishment as indicated above.

The Court FINDS Defendant committed the above offense and ORDERS, ADJUDGES AND DECREES that Defendant is GUILTY of the above offense. The Court FINDS the Presentence Investigation, if so ordered, was done according to the applicable provisions of TEX. CODE CRIM. PROC. art. 42.12 § 9.

The Court ORDERS Defendant punished as indicated above. The Court ORDERS Defendant to pay all fines, court costs, and restitution as indicated above.

### Punishment Options (select one)

☒ **County Jail—Confinement / Confinement in Lieu of Payment.** The Court ORDERS Defendant immediately committed to the custody of the **Sheriff of Harris County, Texas** on the date the sentence is to commence. Defendant shall be confined in the **Harris County Jail** for the period indicated above. The Court ORDERS that upon release from confinement, Defendant shall proceed immediately to the **Harris County District Clerk's office**. Once there, the Court ORDERS Defendant to pay, or make arrangements to pay, any remaining unpaid fines, court costs, and restitution as ordered by the Court above.

☐ **Fine Only Payment.** The punishment assessed against Defendant is for a FINE ONLY. The Court ORDERS Defendant to proceed immediately to the **Office of the Harris County** . Once there, the Court ORDERS Defendant to pay or make arrangements to pay all fines and court costs as ordered by the Court in this cause.

### Execution / Suspension of Sentence (select one)

☒ The Court ORDERS Defendant's sentence EXECUTED.

☐ The Court ORDERS Defendant's sentence of confinement SUSPENDED. The Court ORDERS Defendant placed on community supervision for the adjudged period (above) so long as Defendant abides by and does not violate the terms and conditions of community supervision. The order setting forth the terms and conditions of community supervision is incorporated into this judgment by reference.

The Court ORDERS that Defendant is given credit noted above on this sentence for the time spent incarcerated.

### Furthermore, the following special findings or orders apply:

Defendant to do 30 days HCJ as a condition of probation beginning 5/31/2013 by 6:00 p.m..

## Signed and entered on May 31, 2013

X _____

**WILLIAM HARMON**
JUDGE PRESIDING

Community Supervision Expires On: 5/30/2014

Ntc Appeal Filed: 5/31/2013  Mandate Rec'd: _____

After Mandate Received, Sentence to Begin Date is: _____

Def. Received on _____ at _____ AM / PM

By: _____, Deputy Sheriff of Harris County

Clerk: M RODRIGUEZ

Case Number: 171416101010
Defendant: BARFIELD, LISA ANN

EN/KR23: _____  LCBT: _____  LCBU: _____

Right Thumbprint

Cause No. <u>1714161</u>

The State of Texas

v.

<u>LISA ANN BARFIELD</u>

a/k/a _____

In the _____ District Court   or   County Criminal Court at Law No. <u>2</u>
Harris County, Texas

### ENTRY OF JUDGMENT NUNC PRO TUNC

Today, the Court held a hearing on

☐ the State's written motion for judgment nunc pro tunc.

☐ the Defendant's written motion for judgment nunc pro tunc.

☒ its own motion.

Satisfied from its own recollection and / or from the evidence presented the Court grants the motion and **ORDERS** entry of the following judgment in the minutes of the Court in the above styled and numbered case to make the following correction:
<u>Original judgment cannot be located.</u>

☒   If applicable, the judgment nunc pro tunc supersedes the erroneous judgment previously entered and attached.

Signed this date: _____ **DEC 1 1 2015**

Judge Presiding



CASE NO. 171416101010
INCIDENT NO./TRN: 916594206XA001

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE COUNTY CRIMINAL |
| | § | |
| v. | § | COURT AT LAW NO. 2 |
| | § | |
| BARFIELD, LISA ANN | § | HARRIS COUNTY, TEXAS |
| | § | |
| STATE ID NO.: GA2196687W | § | |

## JUDGMENT OF CONVICTION BY JURY

| | | | |
|---|---|---|---|
| Judge Presiding: | HON. WILLIAM HARMON | Date Judgment Entered: | 05/31/2013 |
| Attorney for State: | J. MORRISON | Attorney for Defendant: | THIESSEN, MARK RYAN |

Offense for which Defendant Convicted:
**DWI 2ND OFFENDER BAC .08**

| | |
|---|---|
| Charging Instrument: **INFORMATION** | Statute for Offense: **N/A** |

Date of Offense:
**10/18/2010**

| | |
|---|---|
| Degree of Offense: **CLASS A MISDEMEANOR** | Plea to Offense: **NOT GUILTY** |
| Verdict of Jury: **GUILTY** | Findings on Deadly Weapon: **N/A** |

| | | | |
|---|---|---|---|
| Plea to 1st Enhancement Paragraph: | **TRUE** | Plea to 2nd Enhancement/Habitual Paragraph: | **N/A** |
| Findings on 1st Enhancement Paragraph: | **TRUE** | Findings on 2nd Enhancement/Habitual Paragraph: | **N/A** |

| | | |
|---|---|---|
| Punished Assessed by: **JURY** | Date Sentence Imposed: **05/31/2013** | Date Sentence to Commence: **N/A** |

Punishment and Place of Confinement: **90 DAYS COUNTY JAIL**

THIS SENTENCE SHALL RUN **CONCURRENTLY.**

☒ SENTENCE OF CONFINEMENT SUSPENDED, DEFENDANT PLACED ON COMMUNITY SUPERVISION FOR **1 YEAR.**

| Fine: **$ 1000.00** | Court Costs: **$ As Assessed** | Restitution: **$ N/A** | Restitution Payable to: ☐ VICTIM (see below)  ☐ AGENCY/AGENT (see below) |
|---|---|---|---|

Time Credited: **N/A**   If Defendant is to serve sentence in county jail or is given credit toward fine and costs, enter days credited below.
NOTES: N/A

Driver's license is suspended for a period of **2 YEARS** .

☐ **Family Violence:**
The Court FINDS that Defendant was prosecuted for an offense under Title 5 of the Penal Code that involved family violence. TEX. CODE CRIM. PROC. art. 42.013.

☐ **Weapon Forfeiture:**
The Court FINDS that a law enforcement agency, namely, seized a weapon, namely, in connection with an offense involving the use of a weapon or an offense under Chapter 46 of the Penal Code. The Court FINDS that 1) Defendant has been previously convicted under Chapter 46 of the Penal Code.

## Name changed from

All pertinent information, names and assessments indicated above are incorporated into the language of the judgment below by reference.

This cause was called for trial in **Harris County, Texas**. The State appeared by her District Attorney.
**Counsel / Waiver of Counsel (select one)**
☒ Defendant appeared in person with Counsel.
☐ Defendant knowingly, intelligently, and voluntarily waived the right to representation by counsel in writing in open court.

It appeared to the Court that Defendant was mentally competent and had pleaded as shown above to the charging instrument. Both parties announced ready for trial. A jury was selected, impaneled, and sworn. The INFORMATION was read to the jury, and Defendant entered a plea to the charged offense. The Court received the plea and entered it of record.

Certified Document Number: 68276982 - Page 4 of 9

The jury heard the evidence submitted and argument of counsel. The Court charged the jury as to its duty to determine the guilt or innocence of Defendant, and the jury retired to consider the evidence. Upon returning to open court, the jury delivered its verdict in the presence of Defendant and defense counsel, if any.

The Court received the verdict and **ORDERED** it entered upon the minutes of the Court.

**Punishment Assessed by Jury / Court / No election (select one)**

☒ **Jury.** Defendant entered a plea and filed a written election to have the jury assess punishment. The jury heard evidence relative to the question of punishment. The Court charged the jury and it retired to consider the question of punishment. After due deliberation, the jury was brought into Court, and, in open court, it returned its verdict as indicated above.

☐ **Court.** Defendant elected to have the Court assess punishment. After hearing evidence relative to the question of punishment, the Court assessed Defendant's punishment as indicated above.

☐ **No Election.** Defendant did not file a written election as to whether the judge or jury should assess punishment. After hearing evidence relative to the question of punishment, the Court assessed Defendant's punishment as indicated above.

The Court **FINDS** Defendant committed the above offense and **ORDERS, ADJUDGES AND DECREES** that Defendant is **GUILTY** of the above offense. The Court **FINDS** the Presentence Investigation, if so ordered, was done according to the applicable provisions of TEX. CODE CRIM. PROC. art. 42.12 § 9.

The Court **ORDERS** Defendant punished as indicated above. The Court **ORDERS** Defendant to pay all fines, court costs, and restitution as indicated above.

**Punishment Options (select one)**

☒ **County Jail—Confinement / Confinement in Lieu of Payment.** The Court **ORDERS** Defendant immediately committed to the custody of the **Sheriff of Harris County, Texas** on the date the sentence is to commence. Defendant shall be confined in the **Harris County Jail** for the period indicated above. The Court **ORDERS** that upon release from confinement, Defendant shall proceed immediately to the **Harris County District Clerk's** office. Once there, the Court **ORDERS** Defendant to pay, or make arrangements to pay, any remaining unpaid fines, court costs, and restitution as ordered by the Court above.

☐ **Fine Only Payment.** The punishment assessed against Defendant is for a **FINE ONLY.** The Court **ORDERS** Defendant to proceed immediately to the **Office of the Harris County District Clerk**. Once there, the Court **ORDERS** Defendant to pay or make arrangements to pay all fines and court costs as ordered by the Court in this cause.

**Execution / Suspension of Sentence (select one)**

☐ The Court **ORDERS** Defendant's sentence **EXECUTED.**

☒ The Court **ORDERS** Defendant's sentence of confinement **SUSPENDED.** The Court **ORDERS** Defendant placed on community supervision for the adjudged period (above) so long as Defendant abides by and does not violate the terms and conditions of community supervision. The order setting forth the terms and conditions of community supervision is incorporated into this judgment by reference.

The Court **ORDERS** that Defendant is given credit noted above on this sentence for the time spent incarcerated. The Court further **ORDERS** that if the defendant is convicted of two or more offenses in a single criminal action, that each cost or fee amount must be assessed using the highest category of offense. Tex. Code Crim. P. art. 102.073.

**Furthermore, the following special findings or orders apply:**

DEFENDANT TO SERVE 30 DAYS HCJ/ACOP BEG 05/31/2013

---

Signed and entered on 05/31/2013

X /S/ William Harmon

**WILLIAM HARMON**
JUDGE PRESIDING

Community Supervision Expires On: 05/30/2014

Ntc Appeal Filed: 05/31/2013 Mandate Rec'd:

After Mandate Received, Sentence to Begin Date is:

Def. Received on        at   ☐ AM  ☐ PM

By: , Deputy Sheriff of Harris County

Clerk: B BROWN

Case Number: 171416101010
Defendant: BARFIELD, LISA ANN

EN/KR23:        LCBT:        LCBU:

Right Thumbprint

Certified Document Number: 68276982 - Page 5 of 9

THE STATE OF TEXAS

VS.

LISA ANN BARFIELD

IN COUNTY CRIMINAL COURT
AT LAW NO. 2
HARRIS COUNTY, TEXAS

## CONDITIONS OF COMMUNITY SUPERVISION

On this the 31st day of May, 2013, the defendant being granted 90 Days in the **Harris County Jail** probated 1 Year Community Supervision for the misdemeanor offense of DWI 2ND OFFENDER in accordance with section 3 of Article 42.12, of the Texas Code of Criminal Procedure is hereby ordered to abide by all of the following conditions and terms of Community Supervision during the period of community supervision.

(1) **Commit no offense** against the laws of this or any other State or of the United States.

(2) Avoid injurious or vicious habits. You are forbidden to use, possess, or consume any controlled substance, dangerous drug, marijuana, alcohol or prescription drug not specifically prescribed to you by lawful prescription. You are forbidden to use, consume, or possess alcoholic beverages. **IF THE DEFENDANT TESTS POSITIVE FOR ALCOHOL OR DRUGS WHILE ON COMMUNITY SUPERVISION, THE DEFENDANT"S FILE WILL BE FORWARDED TO COURT WITH MRP/MAG.**

(3) **Avoid persons or places** of disreputable or harmful character.

(4) Report immediately in person, to the Community Supervision Officer for the County Criminal Court at Law No. 2 on the 31st day of May, 2013 and continue to report to the Community Supervision Officer on the 31st of each month thereafter or as directed by the Community Supervision Officer for the remainder of the supervision term unless so ordered differently by the Court.

(5) Permit a Community Supervision Officer to **visit you at your home, place of employment** or elsewhere.

(6) **Abide by the rules and regulations** of the Harris County Community Supervision and Corrections Department (hereinafter referred to as HCCS&CD). Refrain from disorderly conduct, abusive language or disturbing the peace while present at any HCCS&CD office or facility.

(7) **Work faithfully** at suitable employment and present written verification of employment (including all attempts to secure employment) to your Community Supervision Officer on each reporting date. You must notify HCCS&CD within 48 hours of any change in your employment status.

(8) **Remain within a specified place**, to wit: **Harris County and Surrounding Counties**, Texas. You may not travel outside of **Harris County and Surrounding Counties**, Texas unless you receive prior written permission from the Court through your Community Supervision Officer. You must notify HCCS&CD within 48 hours of any change of residence.

(9) **Support your dependents** as required by law. Provide your Community Supervision Officer with a certified copy of all Court orders requiring payment of child support.

(10) Submit to **RANDOM** drug/alcohol analysis by authorized personnel of HCCS&CD, including any department having courtesy supervision jurisdiction. Provide proof of any medication legally prescribed to you prior to submitting a specimen.

(11) Participate in the HCCS&CD **Community Service Restitution Program (CSRP).** You shall perform a total of 24 hours, at the rate of 12 hours per **MONTH** beginning 06/30/2013.

(12) Pay the following fees through HCCS&CD as specified herein. All payments MUST be in the form of a MONEY ORDER or Cashier 's Check. Write SPN and Cause # on Money Order or Cashier 's Check. Personal checks will not be accepted. **A $ 2.00 transaction fee will be charged each time you make a payment.**

12.1 Pay a **Supervision Fee** at the rate of **$ 60.00** per month for the **duration** of your community supervision beginning 06/30/2013 to HCCS&CD.

# CONDITIONS OF COMMUNITY SUPERVISION

For: LISA ANN BARFIELD

Cause: 171416101010

12.2    Pay a **Fine** of **$ 1,000.00** and **Court Costs** at the rate **$ 155.00** per month beginning **07/31/2013** to Harris County through HCCS&CD.

12.3    Pay **Laboratory Fees** of **$ 10.00** per **MONTH** for the duration of your community supervision beginning **06/30/2013** to HCCS&CD.

12.4    Pay a **$ 12.50** fee for an **Offender Identification Card** by **06/30/2013** to HCCS&CD.

12.5    Pay **$ 50.00** to **Crime Stoppers of Houston** at the rate of **$ 50.00** per **MONTH** beginning **07/31/2013** through HCCS&CD.

12.6    Pay **$ 50.00** to the **Crime Victims Compensation Fund** at the rate of **$ 25.00** per **MONTH** beginning **06/30/2013** through HCCS&CD.

(13) Report in person to HCCS&CD by **06/30/2013** for the purpose of creating and obtaining your **Offender Identification Card**. You are to carry this identification card on your person at all times.

(14) Submit to an **alcohol/drug evaluation** by **06/30/2013**. Attend **outpatient** treatment and aftercare as recommended. **If ordered by the Court, enter in- patient treatment**. Comply with all program rules, regulations and guidelines until successfully discharged or released by further order of the Court. On each reporting date, submit written verification of your enrollment, attendance and/or successful completion of the program to your Community Supervision Officer, to be retained in HCCS&CD's file.

(15) Participate in the HCCS&CD **Maximum Supervision Program** any time that you are assessed by HCCS&CD to require maximum supervision. Comply with all program rules, regulations and guidelines until successfully discharged or released by further order of the Court.

(16) Submit to an evaluation of your **educational skill level** by **06/30/2013**. If it is determined that you have not attained the average skill of students who have completed the sixth grade in public schools in this State, you shall participate in the HCCS&CD program that teaches functionally illiterate persons to read.

(17) Do not drive or operate a motor vehicle in Texas without a valid **Texas Driver 's License.**

(18) **Maintain financial responsibility** as required by law and furnish evidence of such financial responsibility when requested by any law enforcement officer, the Court, or any employee of HCCSCD.

(19) Provide a breath specimen for **breathalyzer/intoxilyzer analysis** if requested by any community supervision officer or law enforcement officer.

(20) During term of supervision, client is **strictly prohibited from shipping, transporting, possessing, receiving, or purchasing a firearm,** altered firearm, or ammunition, or attempting to ship, transport, possess, receive, or purchase a firearm, altered firearm, or ammunition.

(21) You are not to enter a **nightclub, bar or establishment** where alcoholic beverages are primarily sold.

(22) You are **not to lie or make false statements to any employee of HCCS&CD** beginning **05/31/2013**.

(23) You will not use, ingest, or consume any substance that will alter or adulterate any urinalysis results.

(24) **You must include HCCSCD as a creditor if at any time during the term of your supervision you file for bankruptcy.** You must provide verbal notification to HCCSCD of any bankruptcy filing during the term of your supervision, within 72 hours of filing for bankruptcy by contacting your Community Supervision Officer by telephone and providing written notification and documentation, including the "Notice of Bankruptcy Filing", to: Harris County Community Supervision Attention: General Counsel 49 San Jacinto, Suite 600 Houston, Texas 77002.

(25) Participate in and complete, within **180 days** from the **05/31/2013** date Community Supervision is granted, an approved alcohol/drug education program, **Texas D.W.I. Intervention Program for Repeat Offenders** as required by V.A.C.C.P. Art. 42.12, Sec 13. Comply with all program rules, regulations, and guidelines until successfully discharged or released by further order of the Court.

(26) Your **Texas Driver 's License** is suspended for a period of **2 YEARS.**

# CONDITIONS OF COMMUNITY SUPERVISION

For: LISA ANN BARFIELD

Cause: 171416101010

(27) You are ordered to participate in the HCCS&CD's **Electronic Monitoring Program** for **7 DAY** beginning **05/31/2013**. Comply with all program rules, regulations and guidelines until successfully discharged or released by further order of the Court. Observe a curfew from **07:00 AM** until **07:00 AM** seven days a week.

(28) Upon receipt of a **Valid Texas or Occupational Driver 's License**, you are only to operate a motor vehicle, including your vehicle or any other vehicle, equipped with a **deep- lung analysis mechanism (ignition interlock) WITH PHOTOGRAPHIC CAPABILITIES**, to make impractical the operation of the motor vehicle if ethyl alcohol is detected in your breath beginning **05/31/2013** until released by further order of the Court. You may not operate a motor vehicle unless it is equipped with an above said device.

(29) You are ordered to serve not less than and no more than **30 DAYS** in the **Harris County Jail** beginning **05/31/2013**. You must report to 49 San Jacinto, 1st Floor Sheriff 's Department no later than **07:00 PM**. Failure to report as directed will result in a warrant being issued for your arrest.

Certified Document Number: 68276982 - Page 8 of 9

# CONDITIONS OF COMMUNITY SUPERVISION

For: LISA ANN BARFIELD

Cause: 171416101010

You are hereby advised that under the laws of this State, the Court shall determine the terms and conditions of Community Supervision, and may at any time during the period of Community Supervision, alter or modify the Conditions of Community Supervision.

The Court also has the authority at anytime during the period of Community Supervision to revoke the Community Supervision when a preponderance of the evidence establishes a violation of one or more of the conditions set forth above. The Clerk of the Court has furnished me with a copy of the terms and conditions of Community Supervision.

Community Supervision expires the 20th day of May A.D. 2014

LISA ANN BARFIELD, DEFENDANT

May 31, 2013
DATE

Signed this 31st day of May A.D. 2013

WILLIAM HARMON , PRESIDING JUDGE

SANDRINA JAMES , CLO/CSO OFFICER

May 31, 2013
DATE

SPN: 01885908

PLEA: NOT GUILTY

FINE: $ 1000.00

Defendant's Right Thumbprint

Certified Document Number: 68276982 - Page 9 of 9



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   December 19, 2015

Certified Document Number:        68276982 Total Pages:  9

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com

Certified Document Number: 56227144 - Page 1 of 6

CAUSE NUMBER 1714161

| THE STATE OF TEXAS | § | IN THE COUNTY CRIMINAL |
|---|---|---|
| V. | § | COURT AT LAW NUMBER2 |
| LISA ANN BARFIELD | § | OF HARRIS COUNTY, TEXAS |

MEMBERS OF THE JURY:

You have found the Defendant, LISA ANN BARFIELD, guilty of the offense of DRIVING WHILE INTOXICATED. It now becomes your duty to assess punishment.

In addition, the information alleges the Defendant is eligible to be punished as a repeat offender, namely, the Defendant has been once before convicted of a DRIVING WHILE INTOXICATED. To this allegation, the Defendant pleaded, "True."

The Defendant has persisted in entering such a plea even after the trial court admonished him of the consequences of the plea. It plainly appears to the court that the Defendant is competent to stand trial and is not influenced to make this plea by any consideration of fear, nor by any persuasive or delusive hope of pardon prompting the Defendant to plead true. Therefore, the Defendant's plea of true is received by the court.

You are instructed to find the allegation true and so state in your verdict, and you must assess punishment at confinement in the county jail for any term of not less than 30 days nor more than 1 year, and the jury may also assess a fine not to exceed four thousand ($4,000) dollars.

You are further instructed that in fixing the Defendant's punishment, which you will show in your verdict, you may consider all of the facts shown by the evidence admitted before you in the full trial of this case, all of the evidence admitted before you in the punishment phase of this case, and the law submitted to you in this charge.

As required by law, the Defendant has filed, before trial, an affidavit stating the Defendant has never been convicted of a felony in this or any other state.

The term "community supervision" means the placement of a Defendant by a court under a continuum of programs and sanctions, with conditions imposed by the court for a specified period during which a sentence of confinement

, or confinement and fine, is probated and the imposition of sentence is suspended in whole or in part.

If you impose confinement, or confinement and a fine, as punishment and find the Defendant has never been convicted of a felony in this or any other state, you may recommend the jail time may be suspended, and the Defendant be placed on community supervision.

The judge must suspend the sentence and place the Defendant on community supervision if the jury recommends it in their verdict. If you do not desire to suspend the sentence and place the Defendant on community supervision, you will say nothing in your verdict concerning the same.

If the jury recommends community supervision, the judge must determine the conditions of community supervision and the length of time the Defendant shall spend on community supervision. This period may not exceed two years. The judge may, at any time during the period of supervision, alter or modify the conditions. The judge may impose any reasonable condition that is designed to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the Defendant.

Therefore, if this jury shall find that the Defendant, prior to the trial beginning, filed a sworn motion for community supervision and that the Defendant has never before been convicted of a felony offense in this or any other State, you may in your verdict recommend community supervision.

You are the exclusive judges of the facts proved, of the credibility of the witnesses and of the weight to be given the testimony, but you are bound to receive the law from the court, which is herein given to you, and be governed thereby. In arriving at the amount of punishment, you are not to fix the same by lot, chance or any other method than by a full, fair and free exercise of the opinion of the individual jurors.

Your verdict must be unanimous.

The foreperson's duty is to preside at your deliberations and to vote with you in arriving at a unanimous verdict. After you have arrived at your verdict, you must have your foreperson indicate the jury's verdict by signing the particular form or forms that coincide with your verdict.

Certified Document Number: 56227144 - Page 2 of 6

After the court reads this charge, you may not separate from each other without the court's permission, nor may you talk with anyone not of your jury regarding this case. You may communicate with the court in writing, signed by your foreperson, through the officer who has you in charge. Do not attempt to talk to the officer, the attorneys, or the court concerning questions you may have.



BILL HARMON, JUDGE,
COUNTY CRIMINAL COURT AT LAW NO. 2
HARRIS COUNTY, TEXAS

FILED
Chris Daniel
District Clerk
MAY 31 2013
Time:
By
Harris County, Texas
Deputy

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE COUNTY CRIMINAL |
| V. | § | COURT AT LAW NUMBER 2 |
| LISA ANN BARFIELD | § | OF HARRIS COUNTY, TEXAS |

## VERDICT

### CHOOSE ONE OF THE FOLLOWING

We the Jury, having found the Defendant, LISA ANN BARFIELD, guilty of the misdemeanor offense of DRIVING WHILE INTOXICATED, do further find the Defendant was once before convicted of DRIVING WHILE INTOXICATED, and we assess Defendant's punishment at confinement in jail for _____ days. (30-365)

_____
Foreperson

We the Jury, having found the Defendant, LISA ANN BARFIELD, guilty of the misdemeanor offense of DRIVING WHILE INTOXICATED, do further find the Defendant was once before convicted of DRIVING WHILE INTOXICATED, and we assess Defendant's punishment at confinement in jail for __90__ days (30-365) and a fine of $__1000__ dollars. (0 - $4,000)

Both items held in probate.

_____
Foreperson

**IF YOU DESIRE THAT THE DEFENDANT RECEIVE COMMUNITY SUPERVISION ANSWER THE FOLLOWING**

We, the Jury, further find that prior to the beginning of this trial, the Defendant filed a written sworn motion stating that the Defendant had not previously been convicted of a felony in this or any other state, and that such statement is true. We recommend to the Court that the

Certified Document Number: 56227144 - Page 4 of 6

confinement portion of the punishment be suspended, and the Defendant placed on community supervision.

_____
Foreperson

Certified Document Number: 56227144 - Page 5 of 6

## CONDITIONS

(1) Commit no offense against the laws of this or any other State or of the United States;

(2) Avoid *injurious* or vicious habits;

(3) Avoid persons or places of disreputable or harmful character;

(4) Report to the supervision officer as directed by the judge or supervision officer and obey all rules and regulations of the community supervision and corrections department;

(5) Permit the supervision officer to visit him at the defendant's home or elsewhere;

(6) Work faithfully at suitable employment as far as possible;

(7) Remain within a specified place;

(8) Pay the defendant's fine, if one is assessed, and all court costs whether a fine be assessed or not, in one or several sums;

(9) Support his dependents;

(10) Participate, for a time specified by the judge, in any community-based program, including a community-service work program;

(11) Submit to testing for alcohol or controlled substances;

(12) Submit to electronic monitoring;

(13) Make one payment in an amount not to exceed $50 to a local crime stoppers program;

(14) Spend not less than 5, up to 30 days in the Harris County Jail;

(15) Complete a DWI education class;

(16) Shall not drive any vehicle unless the vehicle is equipped with an ignition interlock device that disables the vehicle's ignition if alcohol is detected on the breath of the operator.



I, Chris Daniel, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this   December 8, 2015

Certified Document Number:        56227144

*Chris Daniel*

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

**LISA ANN BARFIELD, appellant,**

**v.**

**THE STATE OF TEXAS, Appellee.**

No. 14-13-00518-CR.

**Court of Appeals of Texas, Fourteenth District, Houston.**

Opinion filed April 2, 2015.

Panel consists of Justices Boyce, Jamison, and Donovan.

# OPINION

MARTHA HILL JAMISON, Justice.

Appellant **Lisa Ann Barfield** appeals from her conviction for driving while intoxicated (DWI). A jury found her guilty and assessed punishment at ninety days' confinement and a $1,000 fine, both of which were probated for one year. In nine issues, appellant contends (1) the trial court erred in denying her motion for continuance; (2) her trial counsel was ineffective in failing to object to evidence of extraneous offenses; (3) counsel was ineffective in offering evidence of appellant's invocation of her right to counsel and failing to object to the use of that invocation as direct evidence of guilt; (4) counsel was ineffective in failing to object to testimony regarding appellant's first trial; (5) the trial judge erred in displaying a Mothers Against Drunk Driving (MADD) plaque in the courtroom; (6) appellant was denied a fair trial because the trial judge was not impartial; (7) the trial court erred by providing a definition of reasonable doubt in the jury charge; (8) appellant was harmed by inclusion of the definition; and (9) the trial court's judgment should be modified to remove the notation of a blood-alcohol content level as no such level was proven. We modify the trial court's judgment to remove the blood-alcohol content notation and affirm the judgment as so modified.

# I. Background

Appellant was arrested for suspected DWI on October 18, 2010. Prior to her arrest, three separate individuals, Paul Jolivet, Dennis Clark, and John Stewart, called 9-1-1 to report concerns regarding her driving. Recordings of the 9-1-1 calls were played for the jury. Jolivet also testified at trial, stating that around 5:30 p.m., he observed appellant driving on a highway when she appeared "pretty intoxicated" and was "bobbing and leaning over" within her vehicle. He further explained that her erratic driving, zigzagging, tailgating, and "hitting [the] brakes pretty hard" led other drivers to honk their horns and clear a path for her. Jolivet was concerned that appellant was about to cause "a tragedy, an accident."

Clark testified that he observed appellant driving in stop-and-go traffic; when appellant was stopped, her body was leaned forward over the steering wheel, but when she pressed the accelerator, her body

would lean back. According to Clark, appellant's eyes appeared to be closed. He called 9-1-1 because it appeared to be "inevitable that she was going to hit somebody." He further stated that other vehicles were avoiding appellant and she was being followed by two tow trucks. Clark described her as being "under the influence of something, whether it be alcohol or pills." Stewart did not testify at trial, but he informed the 9-1-1 operator that appellant was "all over the freeway," appeared to be intoxicated, and was forcing people off the road. He was concerned appellant was going to kill someone with her driving.

Officer Kaleal Johns responded to the call from dispatch and located appellant's vehicle stopped at a red light. Johns pulled behind appellant's vehicle, turned on his lights and siren, and used a loudspeaker to repeatedly instruct appellant to pull to the side of the road. Appellant, however, continued to drive until she reached another red light. At that point, Johns exited his car, knocked on appellant's window, and instructed her to roll the window down. Johns said that appellant just looked at him with glassy, red, bloodshot eyes. He instructed her again to roll down the window, and when she failed to do so, he instructed her to open her door. When she failed to follow that instruction as well, Johns opened the door. He said that a smell of alcohol "saturat[ed]" the interior of the vehicle and he detected it on her breath as well. He asked her if she was okay, but she just looked at him "like she was confused or dazed." He instructed appellant to place her vehicle in park, but she again failed to comply so he put the car in park himself. Johns then placed appellant in the back of his police car to await the arrival of additional officers. He stated that appellant became belligerent while they waited.

Officer Joel Cuffy testified that when he arrived on the scene, he observed that appellant's eyes were red and glassy and she had a strong odor of alcohol on her breath. Further according to Cuffy, appellant initially denied having consumed any alcoholic beverages but subsequently admitted to consuming four glasses of Merlot while at a restaurant shortly before driving. Cuffy performed two field sobriety tests on appellant: the horizontal gaze nystagmus test (HGN) and the one-leg stand test. During the HGN test, Cuffy noted the presence of all six positive indicators for intoxication, while three of four positive indicators were observed during the one-leg stand. Based on his observations, Cuffy concluded that appellant was intoxicated.

Officer Donald Downer also responded to the scene and detected a strong odor of alcohol coming from appellant. After Downer transported appellant to a police station, she refused breathalyzer and blood testing. Based on the odor and his interaction with appellant, during which she repeated certain questions and at times failed to comprehend what was being said to her, Downer concluded that appellant was intoxicated. Downer additionally testified that he and Johns prepared the offense report, which he acknowledged contained some errors, such as noting her eyes were clear when he recalled them being bloodshot. He explained that the report is completed using drop-down computer menus and he or Johns must have made the wrong selection regarding appellant's eyes.

A video taken at the station also was admitted into evidence. In the video, appellant repeatedly refuses to perform a breath test or any sobriety tests, and she repeatedly requests her attorney, including by name. Appellant speaks slowly but coherently in the video. She states that she does not trust the police in Harris County and that she believed she would be charged regardless of how she performed on any of the tests. The video is time stamped as beginning at 7:51 p.m., approximately two hours and twenty minutes after she was reported to be driving erratically, and the person in the video attempting to

administer the tests also states the time as the video begins.

In her testimony, appellant denied having consumed any alcoholic beverages on the day she was arrested. She explained that she suffered from chronic back pain as well as certain psychological disorders, and as a result, she had been prescribed several medications, although at the time of her arrest she had been unmedicated for about a month due to a lapse in medical insurance. She further described several sources of stress that she was under at the time of her arrest, including that her husband was working overseas and she had two exchange students living with her and her son. She denied having been at a restaurant before her arrest and stated she was distracted by a telephone call during her drive and had reached to the floorboard at one point to pick up papers that had fallen. She further recalled a tow truck "herding" her and keeping her from the exit she wanted to take. She denied that she permitted Cuffy to perform any sobriety tests on her.

This appeal stems from the second trial in this case. Following the first trial, appellant was convicted by a jury, but the trial court granted her motion for a new trial. While the motion stated numerous grounds including ineffective assistance of counsel and the fact the jury was permitted to hear evidence of appellant's requests for counsel, the trial court did not specify the grounds on which a new trial was granted. As will be discussed more fully below, at the beginning of the second trial, appellant's counsel requested a continuance based on the fact counsel had received injuries in a recent accident and was taking pain medication. The trial court denied the motion. Following the second trial, appellant was found guilty and sentenced to ninety days' confinement and a $1,000 fine, both of which were probated for one year.

## II. Assistance of Counsel

In issues two through four, appellant contends that she received ineffective assistance of counsel because her trial counsel failed to object to the introduction of a prior DWI conviction and another unadjudicated extraneous offense, offered evidence that appellant invoked her right to counsel and failed to object to the use of that invocation as direct evidence of guilt, and failed to object to testimony regarding appellant's first trial.

## A. Standard of Review

An appellate court reviews the effectiveness of counsel according to the two-pronged test set forth in _Strickland v. Washington_, 466 U.S. 668, 689 (1984). Under this standard, a defendant must (1) demonstrate that trial counsel's performance was deficient and fell below an objective standard of reasonableness, and (2) "affirmatively prove prejudice by showing a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." _Thompson v. State_, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

Review of a trial counsel's performance is highly deferential, as there is a "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance; that is, [appellant] must overcome the presumption that, under the circumstances, the challenged action might be

considered sound trial strategy." _Strickland_, 466 U.S. at 689. Ordinarily, trial counsel should be afforded an opportunity to explain his or her actions, and in the absence of such opportunity, an appellate court should not find deficient performance unless the challenged conduct was so outrageous that no competent attorney would have engaged in it. _Goodspeed v. State_, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). To establish ineffective assistance of counsel based on a failure to object, appellant must demonstrate that the trial court would have committed harmful error in overruling the objection had trial counsel objected. _DeLeon v. State_, 322 S.W.3d 375, 381 (Tex. App.-Houston [14th Dist.] 2010, pet. ref'd). The appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective, and any allegations of ineffectiveness must be firmly founded in the record. _Thompson_, 9 S.W.3d at 813.

## B. Extraneous Acts

Appellant first asserts that her counsel was ineffective in failing to timely object to the admission of evidence concerning extraneous offenses allegedly committed by appellant. This complaint stems from the admission of State's Exhibit 1, which included the tapes of the 9-1-1 calls that were played to the jury. During its deliberations, the jury sent out a note asking for a transcript of the 9-1-1 calls. At that time, defense counsel realized that not only did Exhibit 1 include the tape recordings but it also included notes that were apparently sent from the 9-1-1 dispatcher to the responding police officers. These notes included references to prior arrests of appellant for DWI and evading arrest. When defense counsel realized that these notes were part of State's Exhibit 1, he objected, explaining that he had not realized at the time the exhibit was admitted that it included the notes. The trial court did not rule on the objection. Instead, the judge called the jury back into the courtroom and asked them if they wanted to listen to the 9-1-1 tapes again. The foreman responded, "Yes, sir," and the tapes were played in the courtroom.

Appellant contends that admission of this extraneous offense evidence (i.e., the dispatcher notes in Exhibit 1) violated the Confrontation Clause of the Sixth Amendment to the United States Constitution as well as provisions of the Texas Rules of Evidence. _See_ U.S. Const. Amend. VI; Tex. R. Evid. 404(b), 609; _Crawford v. Washington_, 541 U.S. 36 (2004); _Wood v. State_, 260 S.W.3d 146, 148-49 (Tex. App.-Houston [1st Dist.] (Tex. App.-Houston [1st Dist.] 2008, no pet.). But even assuming appellant is correct that admission of the notes violated these provisions and counsel therefore was ineffective in not timely objecting to the notes, appellant has not on this record demonstrated that counsel's allegedly inadequate representation prejudiced her case. _See Thompson_, 9 S.W.3d at 812 (explaining that second prong of _Strickland_ requires appellant to affirmatively prove prejudice by showing a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different). Appellant does not cite any place in the record that demonstrates the jury ever actually saw the dispatcher notes. The notes were not mentioned before the jury either when Exhibit 1 was admitted into evidence and the tapes were originally played or when the tapes were again played in the courtroom during jury deliberations. The record clearly shows that at no point were the notes mentioned before the jury, much less emphasized to them. _See Motilla v. State_, 78 S.W.3d 352, 356 (Tex. Crim. App. 2002) (noting that whether the State emphasized error can be a factor in harm analysis). Appellant has failed to meet her burden of demonstrating prejudice firmly founded in the

record. *See McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)*; *Young v. State*, 425 (Tex. App.-Houston [1st Dist.] 2012, pet. ref'd). Consequently, we overrule appellant's second issue.

## C. Invocation of Right to Counsel

In her third issue, appellant contends her counsel was ineffective in offering evidence concerning her request for counsel when she was taken into police custody and in failing to object when this evidence was allegedly used as direct evidence of guilt. Counsel in fact raised appellant's invocation of her right to counsel several times during trial, including during opening statements, examination of police officers and appellant herself, and closing arguments. The fact of her invocation was also raised in the playing of the video of appellant made at the police station and during the prosecutor's direct examination of Officer Downer and cross-examination of appellant. Appellant particularly points out that counsel elicited and did not object during the following exchange between defense counsel and Officer Downer.

> Q: And you stated, I think, she is intoxicated because she keeps asking for an attorney, right?
>
> A: That's just one of the signs, cause we [would] be talking and then she'd bring it up every five seconds or so.

Appellant urges that in this exchange, her request for counsel was used as direct evidence of her guilt.

The admission of evidence that a criminal defendant invoked his or her right to counsel after receiving *Miranda* warnings for the purpose of proving guilt may violate the defendant's constitutional right to due process. *See Griffith v. State, 55 S.W.3d 598, 604-07 (Tex. Crim. App. 2001)*; *Hardie v. State, 807 S.W.2d 319, 320-22 (Tex. Crim. App. 1991)*; *see also Lajoie v. State, 237 S.W.3d 345, 352-53 (Tex. App.-Fort Worth 2007, no pet.)* (holding that although admission of evidence regarding invocation of counsel before *Miranda* warnings may not have violated constitutional rights, such evidence was more prejudicial than probative and should not have been admitted). Here, Downer's testimony indicated appellant requested counsel both before and after receiving *Miranda* warnings.

This case, however, does not present a simple failure of defense counsel to object to the State's use of a defendant's invocation of counsel as evidence of guilt. Defense counsel here used the repeated invocation of counsel to support two of the defense's main theories: (1) appellant was not in fact intoxicated at the time of her detention, as evidenced by the fact she was able to calmly and coherently request counsel by name on the videotape; and (2) appellant's request for counsel and refusal to perform the sobriety tests at the station demonstrated her distrust of Houston police, as also stated on the videotape.[1] *See Strickland, 466 U.S. at 689* (explaining that review of a trial counsel's performance is highly deferential and includes a strong presumption that the challenged action may have been sound trial strategy).

Appellant contends that reversal is warranted based on *Winn v. State, 871 S.W.2d 756 (Tex. App.-Corpus Christi 1993, no writ)*; according to appellant, *Winn* is indistinguishable from the present case. We disagree. The defense counsel in *Winn* testified during a habeas corpus hearing that he offered a

videotape which included the defendant invoking his right to counsel because he thought it supported the defendant as a witness, although he did not explain specifically how he thought it would do so. *Id.* at 764. The court of appeals reviewed the tape and could not discern any way in which it could have helped the defendant or been a part of a sound trial strategy. *Id.* The court actually did not mention the invocation of counsel on the videotape as being problematic but instead noted that the defendant's use of profanity, refusal to answer questions, attitude, and other statements did not help the defendant's credibility. *Id.* Additionally, the introduction of the videotape in that case was only one of several allegations regarding counsel's performance that led the court of appeals to conclude the defendant received ineffective assistance of counsel. *Id.* at 764-65. In contrast, defense counsel in the present case had a clear strategy that supported use of the videotape and other references to appellant's request for counsel.[2] See *Cacy v. State,* 901 S.W.3d 691, 700 (Tex. App.-Houston [14th Dist.] 1995, pet. ref'd) (rejecting suggestion that failure to object to evidence of defendant's invocation of her right to counsel could not have had a strategic basis).

Once the appellant used her request for counsel defensively, the State then had a right to suggest an alternative interpretation of the repeated requests, such as put forth in the excerpt from Downer's testimony above. *Cf. Szmalec v. State,* 927 S.W.2d 213, 217 (Tex. App.-Houston [14th Dist.] 1996, pet. ref'd) (holding state could impeach defendant with his own silence once the issue was raised defensively). Moreover, it was the repetitiveness of the requests, and not the nature thereof, that Downer suggested as indicative of intoxication. Also, defense counsel may have been reluctant to object to this testimony because he didn't want to bring further attention to Downer's suggestion the request for counsel was evidence of guilt. Counsel reasonably may have concluded that Downer's seemingly dismissive attitude toward appellant's rights supported the defensive theory that appellant did not agree to the sobriety tests because she distrusted Houston police. Under these circumstances, appellant has failed to meet her burden of establishing that her counsel performed deficiently in presenting and failing to object to evidence of her invocation of the right to counsel. See *Thompson,* 9 S.W.3d at 813. Consequently, we overrule her third issue.

## D. References to First Trial

In issue four, appellant contends trial counsel was ineffective in failing to object to testimony concerning the prior trial. During an exchange between defense counsel and Clark, one of the witnesses who called 9-1-1, counsel first objected to Clark's reference to the earlier trial, but when the objection was overruled, counsel used Clark's testimony from the prior trial to impeach his response to a question. Counsel referred to "testimony from February 28, 2012."

As explained above, to establish ineffective assistance of counsel based on a failure to object, an appellant must demonstrate that the trial court would have committed harmful error in overruling an objection. See *DeLeon,* 322 S.W.3d at 381. The only authority appellant cites is Texas Rule of Appellate Procedure 21.9, which states in relevant part: "A finding or verdict of guilt in the former trial must not be regarded as a presumption of guilt, nor may it be alluded to in the presence of the jury that hears the case on retrial of guilt." Tex. R. App. P. 21.9(d). This rule addresses references to a "finding or verdict of guilt" and does not address the admissibility of a mere reference to a prior trial.

Accordingly, appellant has not demonstrated that the trial court would have erred in overruling an objection to this testimony had one been made. We therefore overrule her fourth issue.

# III. Motion for Continuance

In her first issue, appellant contends the trial court erred in denying her motion for continuance. On the day trial began, defense counsel appeared, announced "not ready for trial," and requested a continuance.[3] Counsel explained that he had been in a bicycle accident and sustained head trauma which required staples on his scalp. He also had injured his sternum and right clavicle, which apparently restricted his arm movements. He further stated that he was "feeling light-headed" and was on medication for pain as well as a cold. He concluded that "I cannot effectively represent my client with these injuries and my sickness." The trial court denied the motion for a continuance and trial began.

We review a trial court's denial of a motion for continuance for an abuse of discretion. *See Janecka v. State,* 937 S.W.2d 456, 468 (Tex. Crim. App. 1996); *see also Rosales v. State,* 841 S.W.2d 368, 372-73 (Tex. Crim. App. 1992) (granting or denying continuance based on the illness of counsel is within the trial court's discretion). To establish that the trial court abused its discretion by denying the motion for continuance, appellant must show actual prejudice to her defense resulted from counsel's representation. *See Janecka,* 937 S.W.2d at 468; *Heiselbetz v. State,* 906 S.W.2d 500, 512 (Tex. Crim. App. 1995). Examples of prejudice include unfair surprise, an inability to effectively cross-examine the State's witnesses, and the inability to elicit crucial testimony from witnesses. *See Janecka,* 937 S.W.2d at 468. Texas courts have concluded that no prejudice is shown when a defendant is ably represented throughout trial by *substitute* counsel. *See Miller v. State,* 537 S.W.2d 725, 726 (Tex. Crim. App. 1976); *State v. Doyle,* 140 S.W.3d 890, 894 (Tex. App.-Corpus Christi 2004, pet. ref'd). However, appellant has not cited and research has not revealed any Texas cases specifically addressing a situation such as here, where defense counsel demonstrated recent injuries and expressed concern as to whether he could provide effective representation, yet a proper motion for continuance was denied. Nonetheless, it appears clear under *Janecka,* et. al, that appellant still must show specific prejudice to her defense resulted from denial of the motion for continuance. 937 S.W.2d at 468.

The most closely analogous case appears to be *Jimenez v. State,* in which defense counsel learned shortly before trial that he was required to have cancer surgery as soon as possible. 717 S.W.2d 1 (Tex. Crim. App. 1986). The trial court denied counsel's motion for continuance, but the court of appeals reversed and ordered a new trial because the defendant had been forced to stand trial "represented by counsel with mind distracted by medical problems who must hurry through the trial in order to have carcinoma surgery when scheduled." *Id.* at 2 (quoting court of appeals). The Court of Criminal Appeals then reversed the court of appeals, holding that no actual prejudice was shown in the record because the defendant was ably represented through trial by counsel. *Id.* Although not directly on point because, unlike here, counsel in *Jimenez* did not allege any current disability, this case does generally support the rule that simply alleging a physical problem is not enough to support reversal; prejudice must be shown in the record. *See Janecka,* 937 S.W.2d at 468.[4]

We note at the outset that appellant's motion for new trial did not allege any prejudice resulted from counsel's condition or otherwise attempt to develop a record as to counsel's performance at trial and the effect, if any, of his medical condition on that performance. *See Jimenez,* 717 S.W.2d at 2 (noting defendant did not file a motion for new trial or otherwise develop a record regarding counsel's performance). In her appellate briefing on this issue, appellant principally makes the same arguments that are discussed above concerning her ineffective assistance of counsel claims, relating to failure to object to the evidence of extraneous offenses or testimony mentioning the first trial in this case and the offer of evidence concerning her invocation of the right to counsel. For the same reasons that we found these assertions did not establish ineffective assistance of counsel, we find that they do not establish prejudice from the denial of the motion for continuance. Moreover, they do not establish that appellant was substantially deprived of counsel.

Next, appellant points to a brief exchange between her counsel and the judge, which occurred during voir dire proceedings. The exchange came immediately after a member of the jury panel was questioned by the judge and the judge determined not to strike the venireperson for cause. The exchange went as follows:

> [Defense Counsel]: I need to make a request for extra strikes under the law that [venireperson] was caused [sic] for a peremptory strike. Now I'll have to use my own strikes to strike him. I'd actually like an extra strike.
>
> THE COURT: Denied.
>
> [Defense Counsel]: I have to perfect the record. Now I'm going to have to strike [another venireperson] because [venireperson] is getting one of my strikes, so [the other venireperson] is going to get left off.
>
> THE COURT: I didn't hear what [you're] saying. Let's proceed.

Appellant suggests that this exchange, and particularly the judge's final reaction, demonstrated defense counsel may have been "slurring his speech, not speaking clearly or having difficulty judging his volume due to his head injury." She then cites a Florida appellate opinion in which the court held that the trial court abused its discretion in denying a motion for continuance when unrefuted facts established that defense counsel's physical condition from a recent head injury prevented him from adequately representing his client. *Jackson v. State,* 464 So.2d 1181, 1182 (Fla. 1985).[5] We do not agree, however, that this brief, ambiguous exchange presented unrefuted facts or otherwise established that appellant's counsel was impaired, much less that his physical condition prejudiced appellant's defense. *See Janecka,* 937 S.W.2d at 468. Moreover, there is no showing on this record that counsel was unable to effectively cross-examine the State's witnesses or otherwise develop crucial testimony through other witnesses. *See id.* Accordingly, we overrule her first issue.

## IV. MADD Plaque

In her fifth issue, appellant contends the trial judge erred in displaying a plaque in the courtroom that had the acronym MADD on it, because it violated the rule that a judge should maintain an attitude of

impartiality and not impress upon jurors any view that he or she may hold regarding the case at hand, citing _Anderson v. State_, 83 Tex. Crim. 261, 265-66, 202 S.W. 944, 946 (Tex. Crim. App. 1918). Defense counsel requested the plaque be removed during a conference on motions in limine, as follows:

> [Defense Counsel]: Okay. Second motion in limine, Judge, we ask you to take down your Mother[s] Against Drunk Drivers' plaque that's sitting behind your bench. The label MADD is clearly visible over the picture frame that you put in front of it. And, as an officer of the court, from standing and sitting in the jury box, it's clearly visible that you have a Mother[s] Against Drunk Drivers' plaque behind your chair.

> THE COURT: Denied.

As appellant acknowledges, our sister court recently considered an appeal involving the same trial judge and apparently the same plaque. _See Simpson v._ references to his medical problems and how they were adversely affecting his performance during the course of jury selection and during the trial itself. 464 So.2d at 1182. At one point during the proceedings, counsel made an oral motion to withdraw based upon his inability to effectively assist his client but the motion was denied. _Id._ Appellant also filed a motion for new trial that presented evidence from counsel and his physician that counsel's medical condition impaired his ability to effectively represent his client. _Id. State,_ No. 01-12-00380-CR, 2014 WL 2767126, at *6-10 (Tex. App.-Houston [1st Dist.] June 17, 2014) (mem. op., not designated for publication), _pet. ref'd,_ 447 S.W.3d 264 (Tex. Crim. App. 2014). The defendant in _Simpson_ argued that displaying the plaque violated statutory law and judicial conduct rules and improperly influenced the jury. _Id._ at *5. The First Court held that even assuming the refusal to remove the plaque constituted error, any such error was harmless in that case, applying the harm analysis standard for nonconstitutional error. _Id._ at *5-7; _see also_ Tex. R. App. P. 44.2(b) (stating that any nonconstitutional error that "does not affect substantial rights must be disregarded").

Appellant contends that the analysis in _Simpson_ is distinguishable because she is asserting here that displaying the plaque violated her constitutional rights, whereas the defendant in _Simpson_ only alleged violations of statutory law and the Code of Judicial Conduct. 2014 WL 2767126, at *5. Constitutional error requires a significantly different harm analysis. _See_ Tex. R. App. P. 44.2(a) ("If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.").

We note at the beginning of our analysis that appellant did not raise any constitutional arguments concerning the MADD plaque in the trial court, including in her motion for new trial. As can be seen in the excerpt above, defense counsel did not offer any specific reason for requesting removal of the plaque and specifically did not mention any constitutional rights as grounds necessitating the plaque's removal. _See_ Tex. R. App. P. 33.1(a) (requiring that to preserve error, a complaint must state the grounds for the ruling that the complaining party seeks from the trial court with sufficient specificity to make the court aware of the complaint, unless the specific grounds are apparent from the context); _Resendez v. State_, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009) (discussing Rule 33.1(a) and stating that "a party must be specific enough so as to 'let the trial judge know what he wants, why he thinks

himself entitled to it, and do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it,'" quoting _Lankston v. State_, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)); _Saldano v. State_, 70 S.W.3d 873, 887 (Tex. Crim. App. 2002) (discussing the policies behind requiring specific objections even in regards to constitutional error); _Tollett v. State_, 422 S.W.3d 886, 896 (Tex. App.-Houston [14th Dist.] 2014, pet. ref'd) (holding defendant waived contention that trial court committed constitutional error by not specifically raising constitutional issue in the trial court).

Appellant argues, however, that the judge's display of the plaque violated her constitutional rights to be tried by an impartial tribunal and may have given the jury an impression of his views. Except for complaints involving fundamental constitutional requirements, all other complaints based on a violation of both constitutional and statutory rights are waived by failure to comply with Rule 33.1. _Mendez v. State_, 138 S.W.3d 334, 338 (Tex. Crim. App. 2004). Fundamental errors include violations of rights that are either "absolute" or "not forfeitable." _Grado v. State_, 445 S.W.3d 736, 739 (Tex. Crim. App. 2014). Such errors need not be preserved to be raised on appeal, and sometimes do not require a harm analysis in order to necessitate reversal of a conviction. _See id.; Cain v. State_, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997).[6]

In _Blue v. State_, 41 S.W.3d 129 (Tex. Crim. App. 2000), the trial judge commented to the venire panel, among other statements, that the defendant had seriously considered entering into a plea agreement. 41 S.W.3d 130, 132. A plurality of justices found this conduct to be fundamental error as it "tainted," "damaged," and "vitiated" the presumption of innocence.[7] _Id._ at 132, 135. The court held this error required no objection and performed no harm analysis.[8]

The display of the MADD plaque in the present case was not of the same magnitude as the judge's comments in _Blue_ and does not rise to the level of fundamental error. _See Jasper v. State_, 41 S.W.3d 129, 132 (Tex. Crim. App. 2000) (holding judge's comments did not rise to such a level as to vitiate the presumption of innocence or the impartiality of the jury as in _Blue_); _see also Chanthakoummane v. State_, No. AP-75,794, 2010 WL 1696789, at *11 (Tex. Crim. App. Apr. 28, 2010) (not designated for publication) (holding judge's comments "did not go so far as to taint the presumption of innocence"). The only information in this record regarding the plaque is defense counsel's representation that the plaque was visible from the jury box and had the acronym "MADD" on it. No mention of the plaque was made in front of the jury. The record does not contain any images of the plaque or its location in the courtroom. The plaque was clearly not specific to this defendant, as were the judge's comments in _Blue,_ and there is no suggestion that it expressly referenced guilt or innocence in any way. We decline to hold that the refusal to remove the MADD plaque was fundamental error requiring reversal even though not properly preserved for appellate review. We therefore overrule appellant's fifth issue.

# V. Impartiality of Judge

In issue six, appellant contends the trial judge committed a litany of actions that demonstrated bias against her and denied her a fair trial.[9] Due process requires a neutral and detached hearing body or officer. _Brumit v. State_, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006) (citing _Gagnon v. Scarpelli_, 411

U.S. 778, 786 (1973)). However, not every complaint about a judge or the conduct of a trial implicates constitutional due process protections; indeed, "most matters relating to judicial disqualification [do] not rise to a constitutional level," and "matters of kinship, personal bias, state policy, remoteness of interest, would seem generally to be matters merely of legislative discretion." *Caperton v. A.T. Massey Coal Co., Inc., 556 U.S. 868, 876 (2009)* (quoting respectively *FTC v. Cement Institute, 333 U.S. 683, 702 (1948),* and *Tumey v. Ohio, 273 U.S. 510, 523 (1927)*); *see also Avilez v. State, 333 S.W.3d 661, 673-74 (Tex. App.-Houston [1st Dist.] 2010, pet. ref'd)* (quoting *Caperton*).

Absent a clear showing of bias, we presume a trial court's actions were not so tainted. *Brumit, 206 S.W.3d at 645.* To reverse a judgment based on improper comments or conduct by the judge, we must find (1) that judicial impropriety occurred and (2) prejudice probably resulted. *Id.; Luu v. State, 440 S.W.3d 123, 128-29 (Tex. App.-Houston [14th Dist.] 2013, no pet.).* Our review encompasses the entire record. *Luu, 440 S.W.3d at 129.* Remarks by the judge during trial that are critical or disapproving of, or even hostile to counsel, the parties, or their cases, ordinarily do not support a challenge for bias unless they reveal an opinion derived from an extrajudicial source. *Id.* When no extrajudicial source is alleged, such remarks demonstrate bias only if they reveal such a high degree of favoritism or antagonism as to have made fair judgment impossible. *Id.*

We begin by noting that appellant does not cite any place in the record where she made a request, objection, or motion based on the trial judge's alleged bias. *See* Tex. R. App. P. 33.1(a) (requiring a timely request, objection, or motion to preserve a complaint for appellate review). She specifically did not file a motion to recuse the judge or seek a new trial on the basis of bias. Accordingly, we may reverse her conviction on this ground only if we find that such bias resulted in fundamental error. *See Mendez, 138 S.W.3d at 341-42; Luu, 440 S.W.3d at 128.* The Court of Criminal Appeals has expressly reserved the question of whether a judge's comments can exhibit bias to such a decree as to constitute fundamental error. *See Brumit, 206 S.W.3d at 644-45* (declining to decide whether an objection is required to preserve error of this nature and instead holding that the record did not reflect partiality of the trial court); *see also Luu, 440 S.W.3d at 128* (discussing and following *Brumit*).

Appellant merely asserts in conclusory fashion that the trial judge demonstrated general bias against DWI defendants and specific bias against her and lists multiple alleged demonstrations of bias with little or no analysis thereof, leaving the court to speculate as to why she perceives the cited occurrences to be objectionable. *See Luu, 440 S.W.3d at 129* (rejecting contention trial judge demonstrated bias that amounted to fundamental error when appellant "offer[ed] no discussion whatsoever to support his conclusory assertions that the judge was outwardly biased against him"). Our review of the record, including the pages appellant cites, does not reveal obvious bias. Most of appellant's citations are to rulings of the court that appellant does not contend were erroneous. There is certainly no clear expression of bias in the rulings or comments. A few of her citations are to rulings that are the subject of other issues on appeal, including denial of the motion for continuance, refusal to grant a mistrial after a witness mentioned the prior trial, defining reasonable doubt in the jury charge, and refusing to remove the MADD plaque from the courtroom.[10] As discussed elsewhere in this opinion, none of these constitutes error. Continued exhibition of the MADD plaque, however, requires further analysis for bias.

As our sister court did in *Simpson,* we find the display of the MADD plaque to be analogous to a judge's extra-judicial statements regarding a category of offense or punishment. 2014 WL 2767126, at *9-10.[11] Courts considering those types of statements have concluded that the mere fact a judge has expressed such views does not, taken alone, demonstrate that the judge acted with bias against a particular defendant in a particular trial. *See* Rosas v. State, 76 S.W.3d 771, 774-75 (Tex. App.-Houston [1st Dist.] 2002, no pet.); Chastain v. State, 667 S.W.2d 791, 794 (Tex. App.-Houston [14th Dist.] 1983, writ ref'd) ("It is presumed that a judge will base his judgment upon the facts as they are developed at the trial."). As the *Simpson* court aptly states: "While the display of the plaque could be viewed as evidence the trial judge dislikes drunk driving, it was not a comment on this particular defendant's guilt or innocence and, therefore, did not demonstrate bias against Simpson." 2014 WL 2767126, at *10. It therefore does not overcome the presumption that the trial judge conducted the trial properly, much less demonstrate fundamental error. *See* Brumit, 206 S.W.3d at 645; Mendez, 138 S.W.3d at 341-42; *Simpson,* 2014 WL 2767126, at *10.

Lastly, regarding appellant's contention that the trial judge has a policy of rejecting all negotiated agreements in DWI cases that would refer a criminal defendant to the "DIVERT" Program and that this policy demonstrates bias, we have previously held directly to the contrary. This position does not in fact establish the judge has a bias against DWI defendants. *See* Rhodes v. State, 357 S.W.3d 796, 800-01 (Tex. App.-Houston [14th Dist.] 2011, no pet.). Accordingly, we overrule appellant's sixth issue.

# VI. Reasonable Doubt Instruction

In issues seven and eight, appellant contends that the trial court erred in providing the jury with a definition of reasonable doubt and that this error prejudiced her case. The definition in question stated "A `reasonable doubt' is a doubt based on reason and common sense after a careful and impartial consideration of all the evidence in the case." The trial court overruled appellant's timely objection to the definition. In *Adkins v. State,* we found submission of the same definition in a DWI trial in this same trial court to be error. 418 S.W.3d 856, 863-66 (Tex. App.-Houston [14th Dist.] 2013, pet. ref'd). The State offers no reason, and we discern no reason, for reconsidering that holding in this case.

Having found error in submission of the charge, we must now analyze that error for harm. Ngo v. State, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). Because appellant properly objected to the definition, we will reverse if the defendant suffered "some harm" to his rights. *See id.*[12] In making this determination, we examine the jury charge as a whole, the state of the evidence, argument by counsel, and any other relevant information revealed in the record. Hutch v. State, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996); *Adkins,* 418 S.W.3d at 866. The record must show that appellant suffered "actual" not merely "theoretical" harm. Almanza v. State, 686 S.W.2d 157, 174 (Tex. Crim. App. 1984); *Adkins,* 418 S.W.3d at 866.

We begin our analysis by noting that the definition submitted by the trial court in this case was the first sentence in paragraph four of the reasonable doubt definition crafted by the Court of Criminal Appeals in Geesa v. State, 820 S.W.2d 154, 162 (Tex. Crim. App. 1991), but subsequently withdrawn by the Court in Paulson v. State, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000). The *Paulson* court harshly

criticized certain portions of the *Geesa* definition; as to the particular language at issue here, however, *Paulson* simply described it as "useless" and circular. *Paulson,* 28 S.W.3d at 572 (comparing the first sentence of paragraph four to the statement "[a] white horse is a horse that is white."). Thus, it appears that the *Paulson* court viewed the language at issue here as less likely to cause harm than some other parts of the *Geesa* definition. *See Adkins,* 418 S.W.3d at 866-67 (interpreting *Paulson* in this fashion).

Turning to the record in this case, we first observe that the State's case against appellant was strong. The State presented five eyewitnesses at trial, including three police officers and two individual citizens, who each concluded that appellant was intoxicated at the time of her detention. The officers observed her close at hand immediately after her detention, and the citizens observed her while she was driving. The State further presented a tape recording of a third citizen's 9-1-1 call in which he likewise concluded appellant was driving while intoxicated. Each witness recounted specific observations that led them to their conclusion. It was also established that appellant refused to submit to a breathalyzer test as well as other sobriety tests. *See Bartlett v. State,* 270 S.W.3d 147, 153 (Tex. Crim. App. 2008) (explaining that refusal to submit to a breath test is relevant in establishing guilt as it tends to show a consciousness of guilt). Although defense counsel developed a few inconsistencies between the statements and the police reports, and appellant denied the allegations during her testimony, the evidence overall was strongly indicative of guilt. *See, e.g., Langham v. State,* 305 S.W.3d 568, 582 (Tex. Crim. App. 2010) (identifying the strength of the State's case as a relevant factor in a harm analysis).

Next, we note that the court's charge appears to have otherwise properly instructed the jury on the burden of proof, the elements of the offense, and the presumption of innocence. *See Adkins,* 418 S.W.3d at 867 (noting propriety of remainder of charge in finding error in defining reasonable doubt harmless). Lastly, we examine comments made by the judge, prosecutor, and defense counsel in discussing the burden of proof with the jury. Before trial began, the judge offered a somewhat rambling statement regarding the importance of the jury's determination but also stressed that appellant must be presumed innocent and that the State had the burden to prove her guilt beyond a reasonable doubt. The prosecutor told the venire panel that he had the burden of proof but could not define beyond a reasonable doubt for the jury. He then stated,

> Beyond a reasonable doubt does not mean that I prove this case to you beyond all doubt in the world. It does not mean that I prove it to you one hundred percent, because if I could prove it to you one hundred percent you would have been a witness and I would have called you to the witness stand. It's not an impossible burden to meet.

This soliloquy does not appear to be particularly helpful or particularly damaging to the jury's understanding of the burden of proof. Defense counsel offered more clarity in closing argument, telling jurors that "[r]easonable doubt . . . is the highest burden in the land." He then generally described the preponderance-of-the-evidence and clear-and-convincing burdens of proof and emphasized that beyond a reasonable doubt was an even harder standard to meet.

Considering the charge as a whole, the strength of the State's evidence, and the comments made by counsel and the judge, we find that the trial court's error in defining reasonable doubt in the jury charge

did not cause actual harm to appellant's rights. *See Ngo, 175 S.W.3d at 743.* Accordingly, we overrule appellant's seventh and eighth issues.

# VII. Blood-Alcohol Content

In issue nine, appellant asserts that the trial court's judgment should be modified to remove the notation of a blood-alcohol content level as there was no evidence establishing any such level. Specifically, the description in the judgment of the offense for which appellant was convicted reads "DWI 2ND OFFENDER BAC .08," but no evidence was admitted showing appellant had a specific blood-alcohol content as she refused such testing. The State concedes the propriety of this requested correction.

Under appropriate circumstances, a court of appeals may modify a trial court's judgment to correct an error. Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993); *see also French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) (holding that "an appellate court has authority to reform a judgment to include an affirmative finding to make the record speak the truth when the matter has been called to its attention by any source"). Accordingly, we modify the trial court's judgment to strike the term "BAC .08" from the offense.

# VIII. Conclusion

We modify the trial court's judgment to remove the notation regarding appellant's blood-alcohol content. Having overruled all of appellant's other issues, we affirm the judgment as so modified.

[1] In opening statements, defense counsel suggested that appellant's calm and coherent requests for counsel demonstrated that she was sober. Counsel further expressed confusion as to why the police did not allow appellant access to her attorney. Appellant explained in her testimony that she requested her attorney "to help explain my rights to me and [because she] didn't feel safe or trusting in the environment [she] was in with the police." She further explained that part of her distrust of the officers came from the fact that they had arrested her when she was not intoxicated. In closing argument, defense counsel further highlighted the refusal by police officers to allow her access to an attorney as evidence that the police were not conducting their investigation appropriately.

[2] Although not cited by appellant, we also find *Ex parte Skelton*, 434 S.W.3d 709 (Tex. App.-San Antonio 2014, pet. ref'd), to be distinguishable for similar reasons. In *Skelton*, a habeas corpus proceeding, defense counsel offered inconsistent explanations regarding why he failed to object to evidence regarding the defendant's request for counsel. *Id.* at 721. This, along with the fact that the evidence contradicted the defendant's position that she had been open and cooperative with police officers, led the court of appeals to conclude that there was no strategic value to not objecting under the circumstances. *Id.* at 720-4.

In contrast, the introduction of evidence and failure to object here were integral to the defense's strategy. Furthermore, it is unclear how defense counsel could have gotten these points across without including the requests for counsel. The videotape is replete with appellant's requests, and it was in relation to her requests for counsel and refusal to perform sobriety tests that she spoke of her distrust of Houston police.

[3] Appellant also filed a written motion for continuance on the same day. This was apparently appellant's first request for a continuance.

[4] In *Stevens v. State*, the Court of Criminal Appeals considered an appeal from a defendant who was put to trial without his attorney despite an affidavit from the attorney and a certificate from a doctor, stating, in substance, that the attorney was unable to appear due to illness. 128 Tex. Crim. 531, 532-33, 82 S.W.2d 148, 148-49 (1935). The defendant had been unable to hire substitute counsel, though he consulted all three attorneys in town. *Id.* The Court held that, under those circumstances, the trial court abused its discretion in refusing to continue the case and thereby substantially deprived the defendant of counsel. *Id.*, 128 Tex. Crim. at 533-34, 532-33, 82

S.W.2d at 149. The circumstances of the present case are distinguishable from the facts in *Stevens* because the record here does not establish that appellant was substantially deprived of counsel.

[5] In *Jackson,* in addition to the motion for continuance, defense counsel made several

[6] Appellant makes her constitutional error assertion only in arguing whether a harm analysis is required, but her arguments are equally applicable to whether preservation was required. We will broadly construe her brief as alleging fundamental constitutional error that is exempt from the requirements of rule 33.1.

[7] A fifth justice would have held that the judge's comments in their entirety violated the right to an impartial judge. *Blue,* 41 S.W.3d at 135 (Keasler, J., concurring in the judgment only).

[8] As described in a concurring opinion,

The trial judge['s] first statement told the jury, essentially, the State and appellant were discussing how appellant would plead but appellant was having difficulty in deciding how to plead. Furthermore, the statement told the jury it was, in the opinion of the trial judge, appellant's fault for the delay in trying the case and that everyone would save time if appellant would simply plead (presumably guilty). The second statement told the jury a defense attorney may have an obligation to present false testimony. The third statement told the jury that, in the judge's opinion, very few defendants, over a forty-year period, had been found not guilty.

*Blue,* 41 S.W.3d at 134-35 (Mansfield, J., concurring).

[9] The specific actions she complains of include: refusing to remove the MADD plaque, denying the motion for continuance and threatening counsel with contempt if he mentioned the ruling to the jury, questioning two venirepersons, "coercing" counsel to release a witness from subpoena, "directing" or "curtailing" counsel's examination of certain witnesses, refusing to grant a mistrial after a witness mentioned the first trial, refusing to allow the defense to publish appellant's mugshot to the jury, permitting the State to use evidence without having given the defense notice, refusing to allow counsel to take two witnesses on voir dire prior to testifying about scientific evidence, defining reasonable doubt in the jury charge, stating "Well, it really doesn't matter what you thought, does it?" when counsel attempted to state on the record the circumstances under which State's exhibit 1 was admitted, and maintaining a blanket policy of rejecting all negotiated agreements in DWI cases that would refer a criminal defendant to the "DIVERT" Program.

[10] The reasonable doubt definition is addressed in the next section of this opinion.

[11] As appellant does here, the defendant in *Simpson* made display of the MADD plaque the basis of both an issue concerning possible impact on the jury as well as an issue complaining of judicial bias. 2014 WL 2767126, at *5-10.

[12] Appellant asserts that a failure to properly instruct on reasonable doubt constitutes structural error that requires reversal and is not subject to a harm analysis. However, the only authority she cites for this proposition, *Sullivan v. Louisiana,* 508 U.S. 275 (1993), is readily distinguishable. In *Sullivan,* the instruction at issue created a presumption of specific intent under the facts of the case. *Id.* at 280-82. Here, the trial court merely included a definition of reasonable doubt that has been described as useless; it did not create a presumption on intent. *Paulson v. State,* 28 S.W.3d 570, 572 (Tex. Crim. App. 2000).

## Save trees - read court opinions online on Google Scholar.