# NO. 12-18-00178-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF* | *§* | *APPEAL FROM THE 369TH* |
| *L.G.K.S. AND L.L.L.S.,* | *§* | *JUDICIAL DISTRICT COURT* |
| *CHILDREN* | *§* | *ANDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Appellant Leslie Sanchez and Appellee Keegan Stewart are the biological parents of L.G.K.S. and L.L.L.S. In 2016, Sanchez initiated an original suit affecting the parent-child relationship (SAPCR) seeking appointment as a joint managing conservator (JMC) with the exclusive right to designate the children's primary residence. Stewart filed a counterpetition seeking the same. Following a bench trial, the trial court signed its final order appointing Stewart as the JMC with the exclusive right to designate the primary residence of the children within Anderson County, Texas. Sanchez presents six appellate issues for our consideration. We affirm.

## BACKGROUND

Sanchez and Stewart had L.G.K.S. and L.L.L.S while they were in a long term cohabitating relationship with one another. Both parties agree that a violent incident between them, which occurred around the end of 2015, precipitated the end of their relationship. The Department of Family and Protective Services (the Department) became involved when Sanchez went to the hospital for injuries sustained in the incident. After the incident, the children lived with Sanchez in Fort Worth, Texas. In approximately the middle of 2016, the Department received a report from Stewart's mother that Sanchez was using drugs. The Department asked Sanchez to submit to a drug test, which revealed she was using methamphetamine. Thereafter, the children were placed in Palestine, Texas with Stewart. From middle to late 2016 until February 2018, the children

resided with Stewart and his parents. In May, Stewart moved into his own apartment in Palestine with the children and his new fiancé.

Sanchez initiated this SAPCR in October 2016. In February 2017, Sanchez and Stewart entered into a Rule 11 agreement wherein both parties would be made JMCs with Sanchez given standard possession supervised by Sanchez's father. Stewart was made the JMC with the right to designate the children's residence.

The trial court conducted a bench trial beginning in February 2018 and ending in May, with the parties presenting evidence on conservatorship issues. The court heard testimony from Sanchez, Stewart, Stewart's parents, Bill and Tamiko Stewart, Sanchez's father, Trinidad Sanchez, and Javette Gray-Gunter, a Department caseworker. The parties asked the court to appoint them both as JMCs, but each petitioned to be designated the JMC with the right to designate the children's primary residence.

Sanchez presented evidence that Stewart physically abused her during their relationship and continued to verbally abuse her by phone and text message after their relationship ended. She alleged that Stewart kept the children from her for approximately five months after she failed the Department's drug test and tried to alienate her from the children. She complained that the Department did not drug test Stewart prior to placing the children with him, despite her and Trinidad's requests that they do so. Sanchez also cited Stewart's alcohol use, past drug problems, and placement on community supervision for a misdemeanor drug charge, as further reasons supporting her request to be appointed JMC with the right to designate the children's residence.

Stewart argued that the children, who had been residing with him in Palestine for approximately two years, were healthy, stable, and well cared for by him. He presented evidence that Bill and Tamiko share a close relationship with the children and provide help with the care of the children while he and his fiancé work. Stewart maintained that Sanchez's physical abuse allegations were exaggerated. He described his relationship with Sanchez as "toxic" because of Sanchez's methamphetamine use. He testified that the violence that occurred during their relationship was reciprocal. Stewart also presented evidence that, prior to the Department placing the children with him, his son was frequently troubled by asthma symptoms related to Sanchez's tobacco use. Additionally, while living with Sanchez, the children frequently had lice. Stewart testified that his daughter required oral surgery at two years of age due to her poor dental hygiene while living with Sanchez. Stewart also established that Sanchez's drug use caused her to lose

custody of her older daughter for a time. Further, Stewart established that while Sanchez maintains she is sober, she currently has a child by and resides with a man on community supervision for manufacture or delivery of methamphetamine.

At the conclusion of the trial, the court appointed Stewart and Sanchez as JMCs, with Stewart having the right to designate the children's primary residence within Anderson County, Texas. The court admonished Stewart about his anger issues relating to Sanchez, and ordered no contact with her outside of the designated family communication electronic program. The court made no finding that Stewart had a history of, or present or past pattern of, physical abuse against Sanchez. The court further ordered each party to take a drug test upon each other's request. In the event that Sanchez tested positive for drugs, her visitation would be immediately suspended, and an emergency hearing would be held. In the event Stewart tested positive for drugs, the children would be delivered to Stewart's parents and an emergency hearing would be held. This appeal followed.

### CONSERVATORSHIP ORDER

In Sanchez's first issue, she argues that the evidence is factually insufficient to support the trial court's order appointing Stewart as JMC with the right to designate the children's residence. In her first subpoint, she argues that the trial court disregarded evidence of Stewart's past physical abuse against Sanchez, or alternatively, abused its discretion in finding that the "family violence presumption was rebutted." In her second subpoint, she asks whether "the [c]ourt's disregard to [Sanchez's] sobriety and to her other children cause[d] an improper judgment." In her second issue, she argues that the trial court erred in excluding (1) a police report she made regarding the 2015 incident that led to her hospitalization; (2) photographs of her injuries from the 2015 incident; and (3) an exhibit she describes as "[Stewart's] probation revocation showing he had admitted to alcohol use while he was on probation for possession of a controlled substance."

In her third issue, she complains that the trial court's treatment of the parties shows that the trial court was biased in favor of Stewart and his parents, and this bias led to an improper judgment. In her fourth issue, she argues that the trial court "awarded paternal grandparents conservatorship under the guise that [Stewart] was awarded the right to designate primary conservatorship violating [Sanchez's] constitutional rights as a parent." In her fifth issue, she complains that the trial court's order regarding future drug testing of her and Stewart gave

3

"paternal grandparents a 'greater right of conservatorship' of the children over [Sanchez] thereby disregarding her parental rights under the Texas Constitution."

Finally, in her sixth issue she argues that the trial court's abuse of discretion led to an improper judgment that requires reversal.

While Sanchez labels six issues, her brief does not delineate separate arguments for each issue. Because all of her numbered issues are related and subject to the same standard of review, we address them together.

## Standard of Review

We review a trial court's decision regarding child custody, control, possession and visitation under an abuse of discretion standard. *Jacobs v. Dobrei*, 991 S.W.2d 462, 463 (Tex. App.—Dallas 1999, no pet.). The trial court's judgment will only be disturbed where the record as a whole shows that the trial court abused its discretion. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *Stallworth v. Stallworth*, 201 S.W.3d 338, 347 (Tex. App.—Dallas 2006, no pet.). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or when it acts without reference to any guiding principles. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam); *In re A.B.P.*, 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, no pet.).

Because the traditional sufficiency standard of review overlaps with the abuse of discretion standard in family law cases, legal and factual sufficiency are not independent grounds of error but are relevant factors in our assessment of whether the trial court abused its discretion. *In re A.B.P.*, 291 S.W.3d at 95; *Peck v. Peck*, 172 S.W.3d 26, 33 (Tex. App.—Dallas 2005, pet. denied). To determine whether the trial court abused its discretion because the evidence is insufficient to support its decision, we consider whether the trial court (1) had sufficient evidence upon which to exercise its discretion and (2) erred in its exercise of that discretion. *Vardilos v. Vardilos*, 219 S.W.3d 920, 921 (Tex. App.—Dallas 2007, no pet.). We conduct the applicable sufficiency review with regard to the first question. *A.B.P.*, 291 S.W.3d at 95; *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied). We then proceed to determine whether, based on the evidence, the trial court made a reasonable decision. *Moroch*, 174 S.W.3d at 857. If some evidence of a substantive and probative character exists to support the trial court's decision, there is no abuse of discretion. *In re C.C.J.*, 244 S.W.3d 911, 917 (Tex. App.—Dallas 2008, no pet.). When, as here, the trial court makes no separate findings of fact or conclusions of law, we must draw every

4

reasonable inference supported by the record in favor of the trial court's judgment. ***Worford***, 801 S.W.2d at 109.

**Applicable Law**

The best interests of the children shall always be the primary consideration of the court in determining issues of conservatorship and possession of and access to the child. TEX. FAM. CODE ANN. §153.002 (West 2014). Suits affecting the parent-child relationship are "intensely fact driven, which is why courts have developed best interest tests that consider and balance numerous factors." ***Lenz v. Lenz***, 79 S.W.3d 10, 18-19 (Tex. 2002). Due to the fact sensitive nature of these cases, trial courts have a degree of flexibility to deal with unforeseen fact patterns which allows them the ability to resolve issues on a case by case basis. *See **id.***

When the trial court appoints joint managing conservators, the court must designate the conservator who has the exclusive right to determine the primary residence of the child and must either establish a geographic area within which the conservator shall maintain the child's primary residence or specify that there are no geographic restrictions. TEX. FAM. CODE ANN. § 153.134(b)(1) (West 2014). There is a rebuttable presumption that it is in best interests of the child or children to appoint both parents as JMCs, however, a finding of a history of family violence involving the parents removes the presumption. *See **id.*** § 153.131 (a),(b) (West 2014). Furthermore, the family code prohibits the appointment of the parents as JMCs if credible evidence of domestic violence is presented. *See **id.*** § 153.004(b) (West Supp. 2018). Credible evidence of domestic violence is evidence that a parent has a history or pattern of past or present child neglect or a history of physical or sexual abuse that has been directed against the other parent, a spouse, or a child. *See **id.*** When, as here, the trial court is the fact finder, it is the sole judge of the weight and credibility of the evidence; if it does not find credible evidence of a history of domestic violence, it is not bound by Section 153.004. ***Matter of Marriage of Harrison***, 557 S.W.3d 99, 127 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).

The admission and exclusion of evidence is committed to the trial court's sound discretion. ***Id.*** at 121. On appeal, the party must demonstrate that the trial court erred in excluding the evidence and that the error probably caused the rendition of an improper judgment. ***Id.*** In determining harm, the court ordinarily will not reverse a judgment when the evidence in question is cumulative and not controlling on a material issue dispositive to the case. ***Id.*** A successful

challenge to evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted. *Id.*

**Relevant Testimony**

Sanchez testified that Stewart physically assaulted her on at least thirty occasions during their relationship. She described in detail the incident in which she alleged Stewart assaulted her in late 2015. Sanchez testified that Stewart became angry with her because he felt unwell. She told the court that Stewart picked her up, threw her out of bed, and began hitting her. She testified that she attempted to run away, but he followed her and pushed her into a piece of furniture, causing her to sustain a severe ear injury that required stitches. She testified that Stewart put his hands around her neck at some point, and she suffered bruises on her arm and skin breakage on her neck. Sanchez testified that on another occasion, a year or two before the 2015 incident, Stewart pushed her and punched her in the buttocks area, breaking her tailbone. She testified that on another occasion around the same time as the broken tailbone incident, Stewart grabbed her head and slammed it into the wall causing a laceration that required several staples. She testified that she only reported the most recent incident to the police. Sanchez offered a copy of the police report and photographs of her injuries into evidence, but the trial court sustained Stewart's objections to the exhibits. Sanchez testified Stewart had not physically assaulted her since their separation, but continued to verbally abuse her through phone calls and text messages.

Stewart described the 2015 incident differently. He testified that they were arguing and "things got out control" and he shoved Sanchez. He testified that Sanchez hit the corner of the wall, causing her ear injury. He denied Sanchez's other allegations of hitting and choking and testified that the only other time he was violent with Sanchez was an occasion prior to 2015 when he pushed her to the ground during an argument. He testified that Sanchez was physical with him as well, and the violence that occurred in the relationship was reciprocal and fueled by Sanchez's drug use. Stewart testified that he is currently able to communicate civilly with Sanchez since they began using the "Family Wizard" application.[1] Stewart testified that he does not have an anger or violence problem, and that his relationship with his current fiancé is stable and peaceful. Stewart blamed any anger issues on the toxicity of his relationship with Sanchez.

---

[1] Our Family Wizard is a website that is designed to facilitate communications between divorced or separated parents with features such as a co-parenting calendar, message board, expense log, and info bank. *See* THE OUR FAMILY WIZARD WEBSITE REVIEW, https://www.ourfamilywizard.com/about-us/OFW-review-for-parents.

6

Gray-Gunter testified that the Department offered services to Sanchez after the 2015 incident. Gray-Gunter testified that in May 2016, the Department received a report that Sanchez was using methamphetamine and a drug test confirmed the report. Gray-Gunter testified that the Department stopped offering services to Sanchez in August 2016 because she left drug treatment. At that time, the Department had a family planning conference with Sanchez, Stewart, and Bill. Gray-Gunter testified that Sanchez felt it was best for the children to remain with Stewart until she could get "herself together." Gray-Gunter testified that she did not drug test Stewart and doesn't recall Sanchez ever asking her to drug test Stewart. Gray-Gunter testified that the Department did not have concerns about Stewart using drugs or abusing Sanchez, because Stewart was living with Bill and Tamiko, and they were the children's primary caretakers. Gray-Gunter testified that the Department closed their case in August 2016. She testified that she has had no professional contact with the family since that time and has no knowledge of the events that transpired with the family since the case closed.

Bill testified that he believed the violence between Stewart and Sanchez was mutual based upon his conversations with Gray-Gunter. Tamiko testified that Sanchez and Stewart lived with her and Bill on and off throughout their relationship, and she never witnessed any physical violence. She described overhearing the two engage in "toxic" verbal arguments. She testified to seeing Sanchez with bruises and she suspected these were "caused by" Stewart. Tamiko and Bill agreed that Stewart and his current fiancé have a good relationship free from dysfunction or violence.

Sanchez admitted to having a methamphetamine problem prior to and during her relationship with Stewart. She testified that Stewart used methamphetamine with her during their relationship. She testified that Stewart sold drugs while they were together. Sanchez and her father testified that Stewart consumed alcohol while caring for the children and once drove the children while he was intoxicated. Stewart denied using drugs, and told the court that his drug charge was a result of being in Sanchez's car with her and prescription pain pills that belonged to her, but were not prescribed to her. Stewart denied having an alcohol problem, and testified that he only drinks alcohol when the children are with Sanchez, and only in moderation. Bill and Tamiko testified that they believe that Stewart used methamphetamine when he was with Sanchez, but has been clean for approximately the last three to four years.

Sanchez testified that Stewart kept the children away from her for five months after the children were placed with him. Stewart testified that the Department informed him that it was best not to send the children to Sanchez until a court order was in place. Stewart disputed Sanchez's claims that he withheld the children for five months, and recalled an occasion where Sanchez's father picked up the children and an occasion where Sanchez picked up the children. Stewart admitted to saying "messed up things" to Sanchez. The text messages Stewart sent Sanchez disparage her parenting skills, drug usage, and choice of male partners in a brutal manner.

Stewart testified that he worked two jobs, one at United Parcel Service and one at Pizza Hut. He testified that he makes sure the children's physical and emotional needs are met. Bill and Tamiko testified that they believe the children are better off living in Palestine, Texas with Stewart. They described him as a good and loving father. They testified that they support Stewart and the children by caring for the children when Stewart is working and providing some financial assistance.

## Section 153.004

We note that Section 153.004 bars the appointment of both parents as JMCs if it is shown by credible evidence that there is a history or pattern of physical abuse by one parent against the other. TEX. FAM. CODE ANN. § 153.004(b). In this case, Sanchez petitioned the court to appoint both her and Stewart as JMCs. Assuming this does not constitute invited error, and in the interest of judicial economy, we will address Sanchez's contention that Section 153.004 bars the appointment of Stewart as JMC with the right to designate the primary residence. *See **Keith v. Keith***, 221 S.W.3d 156, 163 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (under the doctrine of invited error, an appellant may not complain on appeal that a court granted the appellant's own request).

Based on the foregoing testimony, it is clear that the trial court was presented with materially different accounts of the incidences of violence in Sanchez's and Stewart's relationship. Stewart denied the majority of Sanchez's abuse allegations, but did admit to pushing her on two separate occasions during arguments. He testified that Sanchez had been "physical" with him in the past, but did not elaborate.

When, as here, the trial court is the fact finder, it is the sole judge of the weight and credibility of the evidence; if it does not find credible evidence of a history of domestic violence, it is not bound by Section 153.004. ***Harrison***, 557 S.W.3d at 127–28. Further, while a single

8

incident of physical violence could constitute a history of physical abuse, the trial court was also able to consider Stewart's explanation of what occurred and the amount of time that passed since the events in weighing whether a history of abuse was shown. *See id.* at 128. In its role as factfinder, the trial court was entitled to choose which account to believe and could have reasonably credited Stewart's version of events. In doing so, the trial judge could have reasonably found no credible evidence of a history or pattern of domestic abuse by Stewart; thus, the present record does not give rise to a rebuttable presumption that the appointment of Stewart as JMC with the right to designate the children's primary residence was not in the children's best interest under Section 153.004(b). *See id.* at 130 (no abuse of discretion in appointing husband sole managing conservator even though husband pleaded "no contest" to misdemeanor assault because conflicting evidence was presented at trial regarding husband's history of domestic abuse against wife); *see also **Burns v. Burns***, 116 S.W.3d 916, 920 (Tex. App.—Dallas 2003, no pet.) (no abuse of discretion in appointing husband as joint managing conservator with right to designate primary residence of children when conflicting evidence that husband abused wife was presented and nothing in record undisputedly showed pattern of abuse). Accordingly, we conclude that Sanchez has not shown that the trial court abused its discretion in designating Stewart as JMC with the right to designate the children's primary residence, notwithstanding her allegations that Stewart had a history or pattern of physical violence against her. *See **Harrison***, 557 S.W.3d at 130. We overrule this portion of Sanchez's first issue.

**Evidentiary Issues**

In addition to her argument that Section 153.004 barred Stewart's appointment as JMC with the right to designate the primary residence, Sanchez complains that the trial court erred by not admitting certain evidence in support of her domestic violence allegations. Specifically, she argues that the trial court erroneously sustained Stewart's objections to a police report regarding the 2015 incident and photographs taken of her injuries.

Sanchez testified at length regarding the 2015 incident and attempted to admit a police report purportedly prepared by the Greenville Police Department regarding the incident. Stewart objected to the police report on the grounds that Sanchez had not properly authenticated the report and it contained hearsay. Sanchez argued that the police report qualified as a self authenticating document pursuant to rule of evidence 902(4). *See generally* TEX. R. EVID. 902 (designating certain documents as "self authenticating" and requiring no extrinsic evidence of authenticity in order to

9

be admitted). Public records can be self authenticating if they are under seal or are certified copies. *See id.* 902 (1), (4), (10). However, the police report Sanchez offered was not under seal nor was it a certified copy. Thus, Sanchez failed to demonstrate that the trial court erred in excluding the evidence. *See **Harrison***, 557 S.W.3d at 121.

In addition to the police report, Sanchez attempted to introduce photographs of her injuries attached to the report. Stewart objected that the photographs were not properly authenticated. A review of the record shows that Sanchez testified that the photographs were an accurate representation of her injuries at the time Stewart inflicted them. *See **S.D.G. v. State***, 936 S.W.2d 371, 381 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (predicate for introduction of photograph requires proof of its accuracy as a correct representation of subject at a given time, and its relevance to a material issue). The trial court denied the admission of the photographs on grounds that it already heard Sanchez's testimony describing her injuries. The record shows that Sanchez testified in detail about the injuries she sustained during the 2015 incident; thus, photographs of these injuries would be cumulative to evidence already before the court. Therefore, we do not conclude that the exclusion of the photographs caused the rendition of an improper judgment in this case. *See **Harrison***, 557 S.W.3d at 121.

Sanchez also argues that the trial court abused its discretion in failing to admit an exhibit that Sanchez purports to be a "probation revocation" showing that Stewart admitted to using alcohol while on community supervision for the previously discussed drug charge. Sanchez offered the exhibit during her examination of Stewart when he denied having "any issues with [his] probation." Stewart objected to the document on the grounds that it had not been properly authenticated and contained hearsay. Sanchez argued that it was a self authenticating document pursuant to Rule 902. After confirming that the exhibit was not a certified copy of a court filing, the trial court excluded the exhibit. Sanchez then attempted to enter the exhibit for impeachment purposes after Stewart denied telling his community supervision officer that he used alcohol. The trial court denied admission of this evidence.

Unlike the other two exhibits, this exhibit does not appear in the appellate record. Although Sanchez's attorney referenced the exhibit as a photocopy of a "revocation of [Stewart's] probation" and questioned Stewart about admitting to the use of alcohol to his community supervision officer, the actual exhibit was not tendered to the court reporter nor did Sanchez make a formal offer of proof. Because we are unable to determine the substance of the exhibit from the discussion about

the exhibit on the record, and the exhibit is not included as an offer of proof, we conclude that Sanchez failed to preserve error as to the trial court's exclusion of this exhibit. *See* TEX. R. EVID. 103(a)(2); TEX. R. APP. P. 33.1; *In Interest of M.G.N.*, 491 S.W.3d 386, 400 (Tex. App.—San Antonio 2016, pet. denied). Moreover, Sanchez does not make any argument or cite any authority in her brief, beyond the conclusory statement that the trial court erred in excluding the exhibit, as to why the exhibit should have been admitted. *See* TEX. R. APP. P. 38.1(i). Even had Sanchez preserved error as to this complaint, we would conclude any error was harmless because the reason for which the exhibit was offered, i.e., to prove that Stewart admitted to alcohol use while on community supervision, was not a controlling or material issue dispositive to the case. *See Harrison,* 557 S.W.3d at 121. The trial court was aware both that Stewart used alcohol, and that Stewart had been on community supervision for a drug offense. The record simply does not demonstrate that proof Stewart used alcohol while on community supervision in 2016, when he unquestionably successfully completed his community supervision, would have influenced the trial court's decision in appointing Stewart as JMC with the right to designate the children's primary residence.[2] *See Id.* We overrule Appellant's second issue.

**Other Arguments**

With respect to whether the trial court generally abused its discretion by appointing Stewart as the JMC with the right to designate the primary residence, based upon Sanchez's other arguments, we remain mindful that the best interest of the children shall always be the primary consideration of the court in determining issues of conservatorship of and access to the child. TEX. FAM. CODE ANN. 153.002; *Lenz,*79 S.W.3d at 899. The court heard evidence from each parent about the faults of the other. Sanchez argues that the trial court abused its discretion because of evidence that Stewart physically and verbally abused her and alienated her from the children. She points out that the trial court ordered Stewart to participate in an anger management class and admonished him about communicating with Sanchez in an abusive manner and attempting to alienate her from the children. She also argues that the trial court disregarded evidence that she rehabilitated herself and had been sober for almost two years. She further argues that the trial court showed bias in favor of Stewart because of his parents, Bill and Tamiko. In support of her argument, she notes that the trial court allowed Stewart's parents "to sit in front of the bench facing

---

[2] Sanchez's attorney referenced in her cross examination that the alleged motion to revoke Stewart's community supervision was subsequently dismissed.

the audience while parties and counsel were at counsel table and maternal grandfather was left in the audience, while the Judge granted [Stewart] the exclusive right to designate the primary residence."

As previously discussed, the trial court was presented with contradicting accounts regarding the past history of physical violence between Sanchez and Stewart. As the sole judge of the credibility of the witnesses, the trial court was free to disbelieve Sanchez's account with respect to the alleged physical violence. *See Harrison*, 557 S.W.3d at 127. While the trial court heard some evidence that Stewart verbally abused Sanchez and attempted to alienate the children from her, it also heard evidence that the children's health and hygiene suffered when they were living with Sanchez prior to the Department placing the children with Stewart. Furthermore, it heard evidence that the children had been living in Palestine with Stewart for the previous two years, and were healthy, happy, and stable in their current environment. The evidence indicated that while Stewart seemed to have anger directed at Sanchez, he maintained a healthy relationship with his current fiancé and took good care of his children. With respect to Sanchez's arguments regarding her sobriety, the court also heard evidence that Sanchez currently resides with a man on community supervision for manufacture and delivery of methamphetamine.

Viewing the record as a whole, we cannot say that the trial court abused its discretion by appointing Stewart as JMC with the right to designate the children's primary residence. *See Gillespie*, 644 S.W.2d at 451. There was sufficient evidence upon which the trial court exercised its discretion, as demonstrated by our discussion of the evidence contained in the record. *See Vardilos*, 219 S.W.3d at 921; *A.B.P.*, 291 S.W.3d at 95. Based on that evidence, we conclude that the trial court's decision was reasonable. *See Moroch*, 174 S.W.3d at 857. Some evidence of a substantive and probative character exists to support the trial court's decision that the appointment of Stewart as JMC with the right to designate the primary residence is in the best interests of the children. *See* TEX. FAM. CODE ANN. 153.002; *Lenz*, 79 S.W.3d at 899; *C.C.J.*, 244 S.W.3d at 917. Thus, we overrule this portion of Sanchez's first issue and her sixth issue.

**Judicial Bias**

With respect to Sanchez's arguments that the trial court was biased in favor of Stewart and/or his parents, it is well established that absent a clear showing of bias, we presume a trial court's actions were not so tainted. *Barfield v. State*, 464 S.W.3d 67, 80 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). To reverse a judgment based on improper comments or conduct by

the judge, we must find (1) that judicial impropriety occurred and (2) prejudice probably resulted. *Id.* Remarks by the judge during trial that are critical or disapproving of, or even hostile to counsel, the parties, or their cases, ordinarily do not support a challenge for bias unless they reveal an opinion derived from an extrajudicial source. *Id.* When no extrajudicial source is alleged, such remarks demonstrate bias only if they reveal such a high degree of favoritism or antagonism as to have made fair judgment impossible. *Id.*

Sanchez argues that the trial court showed bias by allowing Stewart's parents to sit in front of the bench when it rendered judgment, and asserts in her brief that Stewart's parents were "well known in the community." For this proposition she cites to testimony from Stewart that his father is a high school principal and his mother is a nurse at a local hospital. It is unclear from the record the exact reason why the trial court asked Stewart's parents to sit in front of the bench when it rendered its judgment. Sanchez argues that it shows bias, but she likewise acknowledges that the record shows that Stewart's parents were involved in the children's lives and provided a support system for Stewart. In any event, the trial court's action in allowing Stewart's parents to sit in front of the bench as it rendered judgement, along with her conclusory assertion that they are well known in the community, are simply insufficient to reveal an extrajudicial bias, or a high degree of favoritism or antagonisms to have made fair judgment impossible. *See id.* We overrule Sanchez's third issue.

**Constitutional Violations**

Sanchez also argues that the trial court "awarded the paternal grandparents conservatorship under the guise that [Stewart] was awarded the right to designate primary conservatorship violating [Sanchez's] constitutional rights as a parent and favoring grandparents over [Sanchez]." She cites to ***Troxel v. Granville*** in support of this contention. 530 U.S. 57, 120 S. Ct. 2054, 2055, 147 L. Ed. 2d 49 (2000). While ***Troxel*** recognizes that the Due Process Clause encompasses the liberty of parents to make decisions concerning the care, custody, and control of their children, the case does not support Sanchez's argument that the trial court subverted Sanchez's rights in favor of Stewart's parents.[3] The trial court did not award Stewart's parents conservatorship of the children.

---

[3] In ***Troxel***, the paternal grandparents of two children petitioned the court for visitation with their grandchildren after the death of their son, the children's father. 530 U.S. at 60, 120 S.Ct. at 2057. They were awarded visitation with their grandchildren under a statute that allowed a court to order visitation of children to any person that petitioned for visitation, if said visitation served the best interests of the child. *Id.* The children's mother did not oppose the grandparents having visitation with the children, but opposed the amount and frequency the grandparents were awarded. *Id.* The supreme court held the statute, as applied to the mother, unconstitutionally infringed on her

Sanchez argues that the evidence at trial established that Stewart's parents were the "primary caretakers" of the children, thus, the trial court essentially appointed Stewart as JMC with right to designate the children's primary residence to allow the grandparents to continue to care for the children.

We disagree with Sanchez's interpretation of the evidence. Stewart and his parents testified that, while the children lived with Stewart and his parents, Stewart had been primarily responsible for the children's care. Further, by the time the court entered its judgment, Stewart had moved out of his parents' home and was living with the children at his own residence. While the testimony certainly establishes that Stewart's parents enjoy a close relationship with the children and help Stewart care for them, Sanchez has provided us with no authority that these circumstances amount to the trial court awarding conservatorship to Stewart's parents under a "guise" that violates her constitutional rights as a parent. *See* TEX. R. APP. P. 38.1(i) (appellant's brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record). Moreover, the objective of providing a "safe, stable, and nonviolent environment for the child" is advanced by healthy relationships with and support from extended family, such as grandparents. *See **Avila v. Avila***, No. 03-05-00030-CV, 2006 WL 2986225, at *4 (Tex. App.—Austin Oct. 20, 2006, no pet.) (mem. op.). We overrule Sanchez's fourth issue.

Finally, Sanchez complains that the trial court's order with respect to future drug testing of the parties constituted an abuse of discretion because it gives Stewart's parents a "greater right of conservatorship" of the children than Sanchez. The trial court ordered that if Sanchez failed a drug test, her possession and access would be immediately suspended pending an emergency hearing. The order provided that if Stewart failed a drug test, the children would be delivered to his parents pending an emergency hearing. Sanchez cites to ***Troxel*** in support of her argument. ***Troxel***, as previously discussed, has no application to the facts of this case. And again, it is the best interests of the children that serves as the trial court's primary consideration in determining issues of conservatorship and possession of and access to the children. TEX. FAM. CODE ANN. §153.002. As such, the trial court could reasonably conclude that the drug testing provision was in the children's best interest. Sanchez cites no authority, nor is this Court aware of any, for her

---

fundamental right, as the fit custodial parent, to make decisions regarding her children. ***Id.***, 530 U.S. at 72, 120 S. Ct. at 2063.

contention that the trial court's order violates her constitutional rights as a parent.  *See* TEX. R. APP. P. 38.1(i).  We overrule Sanchez's fifth issue.

## DISPOSITION

Having overruled all six of Sanchez's issues, we ***affirm*** the trial court's judgment.


**GREG NEELEY**
Justice


Opinion delivered September 18, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*


(PUBLISH)


15



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

SEPTEMBER 18, 2019

NO. 12-18-00178-CV

IN THE INTEREST OF L.G.K.S. AND L.L.L.S.

---

Appeal from the 369th District Court

of Anderson County, Texas (Tr.Ct.No. DCCV17-054-369)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the Appellant, **LESLIE SANCHEZ**, for which execution may issue, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*