**Opinion issued May 20, 2021**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00538-CR

———————————

**RICARDO ROMANO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from County Criminal Court at Law No. 6**
**Harris County, Texas**
**Trial Court Case No. 2167075**

---

## MEMORANDUM OPINION

Ricardo Romano was charged by information with the misdemeanor offense of indecent exposure. *See* TEX. PENAL CODE § 21.08. The information alleged that Romano "unlawfully, expose[d] his genitals to [police officer] R. Gardiner with the intent to arouse and gratify [Romano's] sexual desire . . . and [Romano] was

reckless about whether another person was present who would be offended and alarmed by the act, to-wit: [Romano] masturbated in a park, a public place."

Romano waived his right to a jury. The trial court found Romano guilty of the charged offense of indecent exposure and sentenced him to three days in jail and assessed a $1,000 fine. Because he had previously been convicted of indecent exposure, Romano was ordered to register as a sex offender for ten years. *See* TEX. CODE CRIM. PROC. arts. 62.001(5)(F), 62.101(b).

On appeal, Romano raised three issues, asserting: (1) the evidence was not sufficient to show either that he had exposed his genitals with intent to arouse or gratify the sexual desire of any person or that he had acted recklessly; (2) the trial court erred in admitting Gardiner's testimony that he did not believe Romano's claim that Romano had exposed his penis to urinate, not to masturbate; and (3) Romano received ineffective assistance of counsel during the guilt-innocence phase of trial.

On original submission, we reversed the trial court's judgment and rendered a judgment of acquittal after sustaining Romano's challenge to the sufficiency of the evidence on the basis that the evidence was not sufficient to show, beyond a reasonable doubt, that Romano had acted recklessly. *Romano v. State*, 01-18-00538-CR, 2019 WL 4936040, at *6 (Tex. App.—Houston [1st Dist.] Oct. 8, 2019) (mem. op., not designated for publication), *rev'd*, 610 S.W.3d 30, 31 (Tex.

2

Crim. App. 2020) (*Romano I*). The Court of Criminal Appeals granted the State's petition for discretionary review and held that the evidence was sufficient to support the recklessness element. *Romano v. State*, 610 S.W.3d 30, 36 (Tex. Crim. App. 2020) (*Romano II*). The court reversed our judgment and remanded the case to us to consider Romano's remaining issues. *See id.*

After considering Romano's remaining issues, we affirm.

## Background

At trial, the State offered the testimony of Sergeant R. Gardiner, the officer with the Houston Police Department who arrested Romano. The State also offered video from Gardiner's body camera related to events surrounding the arrest.

Gardiner testified that, on August 23, 2017, he was working as a mounted patrol officer in an area of Memorial Park known as the Picnic Loop. At approximately 10:30 a.m., he positioned himself and his horse in a wooded area behind trees where he was "mainly concealed" from view. Through an opening in the trees, Gardiner could see a nearby empty parking lot, picnic tables, and a bike trail. When asked if there were other people in the area, Gardiner testified, "There were some cars passing by and some people on bicycles, yes." Gardiner stated that he was watching "for certain crimes, I would look for mainly cars circling the area and cars parking and things of that nature in the back of the park."

3

Around noon, Romano's car turned off the park road into the parking lot. Gardiner saw Romano "park near where I was." Romano caught his attention because "it was suspicious" as "there's very few reasons to park back there." The video from Gardiner's body camera shows Romano's car entering the parking lot, but branches and leaves obstruct the camera's view of the car once it is parked.

Gardiner testified that he observed Romano "get out of his car and walk around to the back of his car." Gardiner could see the "side" of Romano. Gardiner stated that he saw Romano pull the top of his "jogging shorts" down with one hand and "start masturbating" with the other hand. By "masturbating," Gardiner testified that he meant he saw Romano "stroking his penis with his hand."

On the video, Gardiner can be heard radioing his partner, stating, "[C]ome this way, he's jacking off." Gardiner rode his horse out of the wooded area and over to Romano to arrest him. Gardiner's partner also rode his horse over to the scene. When questioned, Romano denied masturbating, claiming that he had been "trying to use the bathroom."

At trial, Romano testified that he had stopped in the parking lot to review some business papers before heading downtown. He had needed to urinate, so he had gotten out of his car and pulled out his penis. Romano claimed that he did not urinate because Gardiner emerged from the trees on his horse before he had a chance to urinate.

4

Regarding his need to urinate, Romano told the officers that he had drunk a lot of water from a large water jug found inside his car. Gardiner noted that he did not see any urine on the ground and that there was a public restroom across the street from the parking lot. When asked why he did not use the public restroom, Romano said that he did not like those restrooms.

After the officers approached Romano, Gardiner's body camera continued to record the officers' interaction with Romano for approximately 38 minutes. The video shows cars, pedestrians, and a bicyclist passing by. During that time, the police officers obtained Romano's personal information and waited for a patrol unit to transport Romano to jail. At no point did Romano ask to use the restroom.

Romano was charged by information with the offense of indecent exposure. The information alleged that Romano had "unlawfully, expose[d] his genitals to R. Gardiner with the intent to arouse and gratify [Romano's] sexual desire . . . and [Romano] was reckless about whether another person was present who would be offended and alarmed by the act, to-wit: [Romano] masturbated in a park, a public place." *See* TEX. PENAL CODE § 21.08(a). The information also contained the following extraneous-offense allegation: "Before the commission of the offense alleged above, on February 25, 1999, in Cause No. 9810010, in the County Criminal Court at Law No. 8 of Harris County, Texas, [Romano] was convicted of the misdemeanor offense of Indecent Exposure."

The case was tried to the bench. At the end of the guilt-innocence phase, the trial court found Romano guilty of the charged offense of indecent exposure. During the punishment phase, the court found the enhancement allegation to be true. The court sentenced Romano to three days in jail and assessed a $1,000 fine. Because this was his second violation of the indecent-exposure statute, the trial court ordered Romano to register as a sex offender for ten years. *See* TEX. CODE CRIM. PROC. arts. 62.001(5)(F), 62.101(b). Romano did not file a motion for new trial.

Romano appealed, raising three issues. In his first issue, Romano challenged the sufficiency of the evidence to support the judgment of conviction, raising two grounds. Romano did not dispute that he exposed his genitals, but he claimed that the evidence was insufficient to establish the required element that he exposed his genitals with intent to arouse or gratify the sexual desire of any person. Specifically, he claimed that the evidence was not sufficient to show that he exposed his genitals to masturbate rather than to urinate. Romano also asserted that the evidence was insufficient to establish the element that he was reckless about whether another person was present who would be offended or alarmed by the act.

On original submission, we reversed the judgment of conviction and rendered a judgment of acquittal based on our holding that the evidence was insufficient to show, beyond a reasonable doubt, that Romano had been reckless

about whether another person was present who would be offended or alarmed by the exposure of his genitals. *Romano I*, 2019 WL 4936040, at *6. After granting review, the Court of Criminal Appeals held that the evidence was sufficient to support a finding beyond a reasonable doubt that Romano had acted recklessly. *Romano II*, 610 S.W.3d at 36. The court held that we had erred by holding otherwise. *Id.* The court reversed our judgment of acquittal and remanded the case to us to consider Romano's remaining issues. *Id.*

**Sufficiency of the Evidence**

We begin by considering Romano's remaining argument in his first issue: that the evidence was insufficient to show that he exposed his genitals with the intent to arouse or gratify the sexual desire of any person.

**A.      Standard of Review**

We review a challenge to the sufficiency of the evidence under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *See Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). Pursuant to the *Jackson* standard, we "consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Alfaro-Jimenez v. State*, 577 S.W.3d 240, 243–44 (Tex. Crim. App. 2019) (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007));

7

*see Jackson*, 443 U.S. at 319. We can hold evidence to be insufficient under the *Jackson* standard when (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense, or (2) the evidence conclusively establishes a reasonable doubt. *Britain v. State*, 412 S.W.3d 518, 520 (Tex. Crim. App. 2013) (citing *Jackson*, 443 U.S. at 320).

The sufficiency-of-the-evidence standard gives full play to the responsibility of the factfinder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). An appellate court presumes that the factfinder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326.

In our review of the record, direct and circumstantial evidence are treated equally; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper*, 214 S.W.3d at 13. Finally, "[e]ach fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id.*

**B.** **Analysis**

A person commits the offense of indecent exposure when he "exposes his anus or any part of his genitals with intent to arouse or gratify the sexual desire of any person, and he is reckless about whether another is present who will be offended or alarmed by his act." TEX. PENAL CODE § 21.08(a). The requisite specific intent to arouse or gratify the sexual desire of any person can be inferred from an accused's conduct, remarks, and all surrounding circumstances. *See Turner v. State*, 600 S.W.2d 927, 929 (Tex. Crim. App. [Panel Op.] 1980); *Cate v. State*, 124 S.W.3d 922, 931 (Tex. App.—Amarillo 2004, pet. ref'd). Here, the State asserts that Gardiner's testimony that he saw Romano masturbating—that is, he saw Romano "stroking his penis with his hand"—was sufficient to establish, beyond a reasonable doubt, that Romano exposed himself with the intent to arouse or gratify his own sexual desire.

In his brief, Romano states that, "[i]f he exposed his penis to urinate, he did not intend to arouse or gratify the sexual desire of any person. However, if he exposed his genitals to masturbate, he intended to arouse or gratify someone's sexual desire." Romano asserts that "[t]he resolution of this element of the offense turned on whether the evidence was sufficient to establish that he was masturbating." Romano claims that the evidence was not sufficient to establish that fact.

9

Romano acknowledges that Gardiner testified that he saw Romano masturbating. Romano attacks the credibility of Gardiner's testimony by pointing to evidence that Gardiner remarked, at the scene, that he saw Romano "messing with" his penis and that it "looked like" Romano was masturbating. Romano contends that Gardiner was too far away to discern whether he was urinating or masturbating and claims that Gardiner's "sight line. . . was obscured by tree branches and bushes." Romano posits that Gardiner's remarks at the scene that Romano was "'messing with' his penis and that it 'looked like' he was masturbating are equally consistent with removing his penis from his shorts and holding it to urinate."

Romano also claims that the video from Gardiner's body camera "rebuts" Gardiner's testimony. He claims that the video "shows that Gardiner was too far away from [Romano] to see what he was doing and that Gardiner could not have seen that [Romano] was masturbating, even if he was." Romano asserts that the video shows that "it was impossible for [Gardiner] to determine that [Romano] was masturbating" because "the tree branches and bushes obscured Gardiner's view." Romano concludes, "[w]ith the benefit of the video, the Court cannot credit Gardiner's testimony over what the video actually depicts."

We note that Romano's analysis fails to consider the entirety of the evidence, and it does not properly view the evidence in the light most favorable to

10

the verdict. At trial, Gardiner testified that he was "sure" that Romano was masturbating. He stated that he saw Romano pull the top of his jogging shorts down with one hand and "start masturbating" with the other hand. Gardiner testified, "I saw that he was not using the bathroom, that he was masturbating." Gardiner explained that by stating that he saw Romano masturbating, he meant that he saw Romano "stroking his penis with his hand."

Gardiner also testified that it was a clear day, and he confirmed that, even though he was concealed behind trees, he had "a good vantage point and line of sight" of Romano because "there was an opening in the wood line where I was looking." The trial court, as the factfinder, could have reasonably inferred that the video did not necessarily rebut Gardiner's testimony because the body camera did not record from Gardiner's eye level. In other words, the fact that the camera's view was obscured by branches did not necessarily mean that Gardiner's view was likewise obscured. And, based on what is depicted in the video and the video's quality, it was the trial court's prerogative to weigh the evidence and to determine whether Gardiner was close enough to Romano to see him engage in the act of masturbation.

In addition, other evidence supported a finding that Romano did not expose his penis to urinate. Gardiner testified that he did not see urine on the ground in the parking lot. Romano acknowledged that he had not urinated when he saw Gardiner

11

ride his horse out of the wooded area. The evidence also showed that there was a public restroom across the street from where Romano parked his car. And, during the final 38 minutes of the video, Romano did not ask to use the restroom despite indicating to the officers that he had been drinking a lot of water from a large jug of water in his car.

In our review, we are mindful that it is the exclusive role of the factfinder "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences[.]" *Buentello v. State*, 512 S.W.3d 508, 516 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (quoting *Jackson*, 443 U.S. at 319). We "may not re-evaluate the weight and credibility of the record evidence and thereby substitute our judgment for that of the fact-finder." *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Even contradictory evidence in the record will not diminish the sufficiency of evidence that otherwise supports a factfinder's verdict. *Buentello*, 512 S.W.3d at 516. By returning a guilty verdict, we must infer that the trial court believed Gardiner's testimony that he saw Romano masturbating. We defer to that determination. *See Jackson*, 443 U.S. at 318–19.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational factfinder could have found, beyond a reasonable doubt, that Romano exposed his genitals with the intent to arouse or gratify his sexual desire. *See id.*; *see also* TEX. PENAL CODE § 21.08(a) (providing elements of offense).

Accordingly, we hold that the evidence was sufficient to support the judgment of conviction.

We overrule Romano's remaining ground raised in his first issue.

## Evidentiary Challenge

In his second issue, Romano contends that the trial court erred in admitting Gardiner's testimony that Gardiner did not believe Romano's claim at the scene that he was urinating and not masturbating.

### A.     Standard of Review

We review a trial court's ruling on the admission of evidence for an abuse of discretion. *Colone v. State*, 573 S.W.3d 249, 263–64 (Tex. Crim. App. 2019). A trial court "abuses its discretion when it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably." *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019); *see Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010) (stating that trial court does not abuse its discretion unless its determination "lies outside the zone of reasonable disagreement"). We uphold the trial court's ruling if it is reasonably supported by the record and correct under any theory of law applicable to the case. *See Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).

**B.    Analysis**

During direct examination, the State questioned Officer Gardiner regarding his arrest of Romano:

Q. Did you tell him what he was under arrest for?

A. Yes; Indecent Exposure.

Q. How did the defendant respond to this news?

A. He denied it and said that he was trying to use the bathroom.

Q. Did you believe this?

A. No.

[Defense counsel]: Objection, Your Honor, to his belief.

THE COURT: Overruled.

Q. [By the prosecutor] Why didn't you believe this?

A. Because I saw him; and I saw that he was not using the bathroom, that he was masturbating.

Q. Were there any other clues to indicate that he was not using the restroom?

A. There was no urine on the ground, and there was also a restroom directly across the street from where we were at.

Q. So, what substance was the ground composed of? You said this was a parking lot. Was it sand? Can you just give me a description?

A. It was a concrete, like a gravel-type of—well, not gravel but a concrete parking lot.

Q. Would you have been able to see any liquid on the ground?

14

A. Yes.

Romano contends that, because "[a] witness may not give an opinion regarding the truth or falsity of another witness's testimony," the trial court abused its discretion in admitting Gardiner's testimony that he did not believe Romano's claim that he was urinating and not masturbating. *See Blackwell v. State*, 193 S.W.3d 1, 21 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) ("It is generally improper for a witness to offer a direct opinion as to the truthfulness of another witness and such opinion is therefore inadmissible evidence."). Romano also cites Rule of Evidence 702, which provides, in part, that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's . . . specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702. Romano contends that "[p]olice opinion testimony that [Romano] was not telling the truth, and by inference that the police believed that he committed indecent exposure, was inadmissible under Rule of Evidence 702." Romano further asserts that "Gardiner was not qualified as an expert on masturbation, urination, or determining whether a person is truthful. He could not properly give an expert opinion that [Romano] was untruthful when he denied masturbating and said that he was urinating."

The State correctly counters that Rule 702 does not apply because Gardiner, although testifying as a police officer, was not testifying as an expert. Instead, Gardiner was testifying about his perception of Romano's conduct at the scene.

It is well established that "[b]oth lay and expert witnesses can offer opinion testimony." *Osbourn v. State*, 92 S.W.3d 531, 535 (Tex. Crim. App. 2002). Under Rule of Evidence 701, a lay witness can offer opinion testimony if his opinions or inferences are rationally based on his perceptions and helpful to the clear understanding of testimony or the determination of a fact in issue. *Id.* (citing TEX. R. EVID. 701). Even a witness with specialized knowledge or experience may offer lay opinion testimony if he testifies regarding events that he personally perceived. *Id.* at 536. "Thus, although police officers have training and experience, they are not precluded from offering lay testimony regarding events which they have personally observed." *Id.* Permissible testimony, drawn from the witness's own observations or experiences, can include opinions, beliefs, or inferences. *Id.* at 535.

Here, Gardiner testified that he witnessed Romano masturbating, that is, he witnessed Romano stroking his penis. Romano also testified that, after he approached Romano, he did not see urine on the ground. And he testified that there was a public restroom across the street. Gardiner's testimony that he did not believe Romano's claim that he exposed his penis to urinate was a permissible belief drawn from his observation of Romano in the act of masturbation and the

16

surrounding circumstances. *See James v. State*, 335 S.W.3d 719, 725 (Tex. App.—Fort Worth 2011, no pet.) (holding officer's testimony—that defendant's claim of self-defense did not "make any sense" based on his observations of defendant's lack of injury and complainant's injuries—was admissible under Rule 701). The trial court could have reasonably concluded that Gardiner's complained-of testimony was admissible under Rule 701 because it was rationally based on his perception of the act involved in the charged offense and was helpful to "the determination of a fact in issue." *See* TEX. R. EVID. 701; *James*, 335 S.W.3d at 725.

Even if the trial court abused its discretion by permitting Gardiner to testify that he did not believe Romano's claim that he exposed his penis to urinate, the error was harmless. "The erroneous admission of evidence is non-constitutional error." *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018). Non-constitutional errors are harmful, and thus require reversal, only if they affect an appellant's substantial rights. TEX. R. APP. PROC. 44.2(b). This means that an error is reversible only when it has a substantial and injurious effect or influence in determining the factfinder's verdict. *Gonzalez*, 544 S.W.3d at 373. If we have a fair assurance from an examination of the record, as a whole, that the error did not influence the factfinder, or had but a slight effect, we will not overturn the conviction. *Id.* In making this determination, we consider (1) the character of the alleged error and how it might be considered in connection with other evidence;

17

(2) the nature of the evidence supporting the verdict; (3) the existence and degree of additional evidence indicating guilt; and (4) whether the State emphasized the complained of error. *Id.*

We have reviewed the entire record. Even in the absence of Gardiner's complained-of testimony, the trial court, as the factfinder, could have reasonably concluded that Romano exposed his penis to masturbate and not to urinate. As discussed, Gardiner testified that he was "sure" that he saw Romano masturbating. He also testified that there was a public restroom nearby and that he did not see urine on the ground near Romano. In addition, the video shows that after Gardiner initiated Romano's arrest, Romano did not ask to use the restroom for the remaining 38 minutes that he was at the scene, despite indicating to the officers that he had been drinking a lot of water from a large jug in his car. Also, the complained-of testimony aside, the trial court could have reasonably assumed that Gardiner did not believe Romano's claim that he exposed his penis to urinate, given that Gardiner arrested Romano for the offense of indecent exposure. *See Brown v. State*, 580 S.W.3d 755, 767 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd) (holding that improper admission of investigating officer's opinion that defendant was not credible was harmless error, in part, because officer called district attorney's office to accept charges against defendant after investigation and "the jury could reasonably assume that [the investigating officer] did not find [the

defendant] credible and believed he was guilty of sexual assault"). Finally, we note that the State did not emphasize the complained-of testimony.

Having reviewed the entire record, we have a fair assurance that the admission of Gardiner's testimony that he did not believe Romano's claim that he exposed himself to urinate had but a slight effect on the trial court's verdict; therefore, we do not find that Romano's substantial rights were affected. We hold that any error in admitting the complained-of testimony was harmless.

We overrule Romano's second issue.

## Ineffective Assistance of Counsel

In his third issue, Romano contends that his trial counsel rendered ineffective assistance during the guilt-innocence phase of trial.

### A.    Legal Principles

To prevail on a claim of ineffective assistance of counsel, an appellant must show the following: (1) counsel's performance fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In reviewing counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong

presumption that counsel's performance falls within the wide range of reasonable professional assistance or trial strategy. *See Robertson v. State*, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006).

Romano has the burden to establish both prongs by a preponderance of the evidence. *See Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). "An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

**B.      Analysis**

During the guilt-innocence phase of trial, testimony was elicited about Romano's 1999 conviction for indecent exposure. During cross-examination of Gardiner, defense counsel attempted to show the reason why Romano had not chosen to use the nearby public restroom but had instead chosen to urinate in the parking lot. With respect to the public restroom, Gardiner testified that Romano told him at the scene that he "didn't want to go over there [to the public restroom]," but Gardiner did not remember whether Romano had stated the reason why he did not want to use the public restroom. Defense counsel followed-up by asking Gardiner if he knew that Romano had been "previously arrested at a bathroom in 1999," and Gardiner responded affirmatively.

On re-direct, the State asked Gardiner whether he knew, at the time he arrested Romano, that Romano had a prior conviction for indecent exposure. Gardiner answered that he did not know at that time but had learned later that day about Romano's prior indecent-exposure conviction.

Romano testified on cross-examination that his prior conviction was the reason why he had not wanted to use the public restroom to urinate and had instead chosen to urinate in the parking lot. The State asked Romano, "So, why were you wanting [to] avoid the bathroom?" Romano had earlier indicated on direct examination that he had seen a "news clip" about sexual activity in the Memorial Park restrooms. He responded to the State's question about the restroom as follows: "Well, prior conviction. I just—I wanted nothing to do with that kind of bathroom."

On appeal, Romano asserts that his trial counsel's performance was deficient because counsel "mentioned, elicited, and failed to object to testimony" about Romano's 1999 conviction for indecent exposure, which, he claims, was inadmissible during the guilt-innocence phase of trial under Rule of Evidence 609.[1]

---

[1] A second violation of the indecent-exposure statute requires a defendant to register as a sex offender for 10 years. *See* TEX. CODE CRIM. PROC. arts. 62.001(5)(F), 62.101(b). As mentioned, the information charging Romano with the instant offense contained an enhancement paragraph alleging that Romano had been convicted of indecent exposure in 1999. During the punishment phase, evidence of Romano's 1999 conviction for indecent exposure, including the judgment of conviction, was admitted for the purpose of determining whether Romano would

*See* TEX. R. EVID. 609 (governing admissibility of prior criminal convictions for impeachment purposes). Even if we assume, without deciding, that evidence of Romano's prior conviction was inadmissible, we cannot conclude, on this record, that counsel's performance was deficient.

Ordinarily, counsel should have an opportunity to explain his actions before being held ineffective. *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). Here, because no motion for new trial was filed, trial counsel did not have an opportunity to explain his actions relating to the admission of evidence of Romano's prior conviction.

To satisfy the first prong of *Strickland* on a silent record, it must be apparent "that counsel's performance fell below an objective standard of reasonableness as a matter of law, and that no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning." *Lopez*, 343 S.W.3d at 143; *see Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (stating that, to be deficient, attorney's conduct must "so outrageous that no competent attorney would have engaged in it"). This is not such a case. Failure to object to

be required to register as a sex offender. After hearing evidence of the prior conviction during the punishment phase, the trial court found the enhancement allegation to be true and ordered Romano to register as a sex offender for 10 years. Romano makes no complaint about the admission of the evidence regarding his 1999 conviction during the punishment phase. He complains only of his trial counsel's performance with respect to the admission of evidence of his prior conviction during the guilt-innocence phase.

22

inadmissible extraneous-offense evidence may be sound trial strategy. *See*

*Williams v. State*, 417 S.W.3d 162, 183–84 (Tex. App.—Houston [1st Dist.] 2013,

pet. ref'd) (recognizing that failure to object to extraneous-offense evidence may

constitute "sound and plausible trial strategy"); *Heiman v. State*, 923 S.W.2d 622,

626 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd) (holding it was within scope

of plausible trial strategy that trial counsel did not object to extraneous offense

because record showed trial counsel's strategy was to use extraneous offense to

undermine complainant's credibility).

Here, the record suggests that admission of the evidence related to

Romano's prior conviction was part of defense counsel's trial strategy. The

evidence showed that a restroom was available across the street from the parking

lot where Romano exposed himself, casting doubt on Romano's claim that he

exposed his penis because he needed to urinate. The evidence also lent support to

Gardiner's testimony that Romano exposed his penis to masturbate.

The record suggests that defense counsel's trial strategy regarding the

admission of the extraneous-offense evidence was to neutralize the effect of the

availability of the public restroom by showing that Romano had an aversion to

public restrooms in Memorial Park because he associated them with his prior

conviction for indecent exposure. Accordingly, it is possible that trial counsel's

decisions relating to the complained-of testimony was part of a reasonable trial

strategy. *See Ex parte Ellis*, 233 S.W.3d 324, 335–36 (Tex. Crim. App. 2007) (concluding that extraneous-crimes testimony "served a strategic purpose" and was based on "sound trial strategy" even though "risky"); *Cedillos v. State*, No. 08-14-00180-CR, 2018 WL 4113169, at *7 (Tex. App.—El Paso Aug. 29, 2018, pet. ref'd) (not designated for publication) (holding that admission of evidence of extraneous offense by defense was possible trial strategy "to get in front of" State's evidence about extraneous offense in order to allow appellant to present "his side of the story first" and to show jury appellant "was not hiding anything"); *Riggs v. State*, No. 05-16-01503-CR, 2017 WL 5167653, at *3–*4 (Tex. App.—Dallas Nov. 8, 2017, no pet.) (mem. op., not designated for publication) (holding that appellant failed to demonstrate that his counsel's representation fell below objective standard of reasonableness in eliciting testimony from appellant about his criminal history because testimony was important to his defensive theory); *see also Barfield v. State*, 464 S.W.3d 67, 74 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (holding ineffective assistance not shown where defense counsel offered evidence of appellant's invocation of right to counsel "to support two of the defense's main theories"). Based on the record, we cannot conclude that the suggested trial strategy was so outrageous that no competent attorney would have engaged in it, particularly when, as here, trial counsel was not provided a chance to

explain his conduct. *See Goodspeed*, 187 S.W.3d at 392; *Lopez*, 565 S.W.3d at 887.

We conclude that Romano has not demonstrated that his trial counsel's performance fell below an objective standard of reasonableness; thus, he has not satisfied the first *Strickland* prong. We hold that Romano has failed to show, by a preponderance of the evidence, that he received ineffective assistance of counsel at trial. *See Strickland*, 466 U.S. at 687–88, 694.

We overrule Romano's third issue.

## Conclusion

We affirm the judgment of the trial court.


Richard Hightower
Justice

Panel consists of Justices Kelly, Hightower, and Countiss.

Do not publish.  TEX. R. APP. P. 47.2(b).